Opinion
FLIER, J.
—Plaintiff Luis Castro-Ramirez sued his former employer, Dependable Highway Express, Inc. (DHE), alleging causes of action for disability discrimination, failure to prevent discrimination, and retaliation under the California Fair Employment and Housing Act (FEHA or the Act) (Gov. Code, § 12900 et seq.), as well as wrongful termination in violation of public policy. (He alleged other claims not pursued on appeal.) Plaintiff’s son requires daily dialysis, and, according to the evidence, plaintiff must be the one to administer the dialysis. For several years, plaintiff’s supervisors scheduled him so that he could be home at night for his son’s dialysis. That schedule changed when a new supervisor took over and ultimately terminated plaintiff for refusing to work a shift that did not permit him to be home in time for his son’s dialysis. The trial court granted defendant’s motion for summary judgment and denied plaintiff’s motion to tax costs.
We reverse the judgment and the order denying the motion to tax costs. Plaintiff has demonstrated triable issues of material fact on his causes of *1032 action for associational disability discrimination, failure to prevent discrimination, retaliation, and wrongful termination in violation of public policy.
FACTS AND PROCEDURE
1. The Complaint
Plaintiff alleged that, when DHE hired him to work as a truck driver in 2010, he told DHE he had a disabled son who required dialysis on a daily basis and he (plaintiff) was responsible for administering the dialysis. He requested work schedule accommodations that his supervisor initially granted, permitting him to attend to his son in the evening. In 2013, a new supervisor changed his work schedule. Plaintiff complained to the new supervisor about the change in schedule. On April 23, 2013, the supervisor gave plaintiff the 12:00 p.m. shift. Plaintiff objected and explained that the shift would not allow him to be home early enough in the evening to tend to his disabled son. The supervisor spoke to a manager and then terminated plaintiffs employment. The supervisor told plaintiff he “had quit by choosing not to take the assigned shift.”
Plaintiff’s complaint alleged a cause of action for associational disability discrimination in violation of FEHA, claiming defendant “was substantially motivated, in part, to terminate Plaintiff because of his association with his disabled family members.” Plaintiff also alleged DHE’s conduct was in retaliation for his assertion of rights under FEHA. Plaintiff alleged several other causes of action, including failure to take reasonable steps to prevent the unlawful discrimination, and wrongful termination in violation of public policy.
2. DHE’s Motion for Summary Judgment
The pertinent facts reflected in the parties’ summary judgment papers are as follows. DHE employed plaintiff at will. DHE hired plaintiff in December 2009 to work out of its Los Angeles terminal as a local driver. During his time with DHE, he drove different routes throughout Los Angeles County.
Plaintiff’s son needs a kidney transplant and has required daily home dialysis treatments for the last 15 years. Plaintiff is the only person in his household who knows how to operate the dialysis machine for his son. One has to take classes to learn how to operate the machine.
When plaintiff first began work at DHE, he informed the recruiting manager who hired him that he had daily obligations at home related to administering dialysis to his son. Plaintiff reported to Armando Gomez and *1033 Winston Bermudez, who were his initial supervisors, for over three years. Bermudez became his supervisor in 2011, when Bermudez was promoted to the dispatcher position. When Bermudez became his supervisor, plaintiff told Bermudez that he had a disabled son to whom he needed to apply daily dialysis. He also told Bermudez he needed to end his shifts early enough to get home for his son’s treatments. Bermudez met plaintiffs needs as often as he could by giving him a shift that enabled him to care for his son. Bermudez never gave plaintiff a shift that began as late as noon. Gomez also knew about plaintiffs special need to go home early to care for his son and informed Bermudez of this when Bermudez first became a dispatcher. Thus, while the schedules of DHE’s drivers varied from day to day, plaintiff’s typical schedule was from 9:00 or 10:00 a.m. until 7:00 or 8:00 p.m. There were times, however, when plaintiff worked shifts ending later, such as after 10:00 or 11:00 p.m.
Plaintiff’s ability to work later depended on his son’s condition on any given day. The amount of time his son needed to be connected to the machine varied between 10 and 12 hours. The time at which plaintiff would need to start administering dialysis also varied from between 7:00 p.m. and 12:00 a.m. There was no “normal day,” beyond these general guidelines. On days when his son would need to be connected on the earlier side, plaintiff would communicate this to Gomez or Bermudez.
Throughout his employment, plaintiff performed satisfactorily with no problems. Plaintiff loved his job and appreciated DHE’s assistance “from the heart.” That assistance changed, however, when Bermudez was no longer his supervisor.
Sometime in March 2013, DHE promoted Bermudez to operations manager and Boldomero Munoz-Guillen (known as Junior) became plaintiff’s supervisor (and Bermudez supervised Junior). When this happened, Bermudez told Junior that plaintiff had special needs related to his disabled son and needed to leave early. Bermudez asked Junior to “work with” plaintiff.
At some point later in March 2013, plaintiff complained to Bermudez that Junior had changed his hours, and he was starting later and finishing later and was unable to leave to tend to his son. Bermudez told Junior that plaintiff was complaining about his changing hours and his need to leave early. Junior told Bermudez that he did not need to bring plaintiff in earlier at the time, but Junior indicated he would “work on that.” Bermudez never reported plaintiff’s special needs to human resources and did not monitor plaintiff’s schedule after plaintiff complained to him about Junior.
On April 15, 2013, approximately a week before plaintiff’s termination, one of DHE’s customers sent an e-mail to Bermudez and another manager *1034 (not Junior) asking for plaintiff, the “regular drive[r],” to do the customer’s deliveries at 7:00 a.m. The customer stated that it “ha[d] always been done like that until recently.” When plaintiff asked Junior about deliveries to this customer, Junior told him that the customer did not want plaintiff to make those deliveries and did not like plaintiffs work, and that was why Junior had given him shifts starting later. A few days later, the customer called plaintiff directly. The customer asked plaintiff why he was not making deliveries. Plaintiff explained that Junior had said the customer did not like his work. The customer told plaintiff that was untrue and gave him a copy of the e-mail specifically requesting plaintiff’s services. When deposed, Junior testified that he had seen the e-mail from the customer, but he could not recall exactly when.
On April 22, 2013, Junior assigned plaintiff a shift that started at 11:55 a.m., the latest he had ever started a shift, and ended at 9:04 p.m. He had “no problem” with the route that day because it still allowed him to be home in time for his son’s dialysis. But he told Junior: “Please, I need to have my job like always. I’ve always had help from everyone except you.”
The following day, on April 23, 2013, Junior assigned plaintiff a shift beginning at 12:00 p.m. Unlike the previous day, this assignment was for a route from Los Angeles to Oxnard and back, including multiple pickups and deliveries. Plaintiff explained to Junior that it was too late in the day for him to drive that route because he could not get back in time to administer dialysis to his son by 8:00 p.m. Plaintiff requested another route or simply to take that day off. He also reminded Junior that Bermudez had already talked to Junior about plaintiff’s need for shifts enabling him to leave early for his son.
When plaintiff complained to Junior, Junior laughed and said, “Winston [Bermudez] doesn’t work here anymore. Now it’s me.” Junior told plaintiff that, if he did not do the route, he was fired. Plaintiff said he was sorry, but he could not do it. Junior told him to return the next day to sign the termination paperwork.
Plaintiff returned to DHE for three consecutive days after that because he wanted to work. On the third day, another manager told him that he had not worked for three days and “of course” he was terminated. DHE processed the termination as a “[vjoluntary [t]ermination” or “[Resignation,” with the stated reason being “[Refused assignment.” Plaintiff refused to sign the document stating he had resigned.
On the day Junior terminated plaintiff, Junior scheduled at least eight other drivers to start shifts well before noon, with start times at 4:54 a.m., 5:54 a.m., 7:00 a.m., 7:54 a.m., 8:06 a.m., 8:54 a.m., 9:00 a.m., and 10:54 a.m.
*1035 Maria Ramirez, DHE’s human resources manager, testified: “It is not uncommon for drivers at [DHE] to refuse work assignments for a variety of reasons; if one of its drivers refuses a work assignment for any reason, this is grounds for termination.” DHE’s employee handbook states refusal to obey a supervisor’s order or refusal to perform a job assignment is grounds for disciplinary action, including suspension without pay, discharge, counseling, and warning notices.
3. The Trial Court’s Rulings
The trial court granted DHE’s motion for summary judgment, concluding that there was no triable issue of material fact on any cause of action. The court rejected plaintiff’s theory that DHE violated FEHA by terminating him for requesting an accommodation to care for a relative with a disability. The court concluded plaintiff’s evidence at best showed that Junior was unwilling to provide accommodation to the same extent as plaintiff’s previous supervisor. The court found no evidence to show the termination decision was based on plaintiff’s association with his child, or in retaliation for his scheduling requests. Even assuming plaintiff could make a prima facie case, the court found inadequate evidence that defendant’s stated reason for termination was pretextual. Plaintiff could not show the assignment he refused was improperly motivated, because plaintiff worked nearly identical hours the previous day without objection.
The court entered judgment for DHE and entered an amended judgment of dismissal several weeks later, awarding statutory costs to DHE in the amount of $7,592.08. Still later, on January 8, 2015, the trial court denied plaintiff’s motion to tax or strike DHE’s costs, rejecting plaintiff’s argument that an employer is not entitled to costs in a FEHA action.
Plaintiff appealed from the judgment and the subsequent order denying his motion to tax costs. We consolidated the appeals for purposes of briefing, oral argument, and decision.
STANDARD OF REVIEW
We review an order granting summary judgment de novo, “considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.” (Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089] (Guz).)
A defendant moving for summary judgment must show “that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action.” (Code Civ. Proc., § 437c, *1036 subd. (p)(2).) “In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his or] her evidentiary submission while strictly scrutinizing defendants’ own showing, and resolving any evidentiary doubts or ambiguities in plaintiffs favor.” (Saelzler v. Advanced Group 400 (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) We accept as true both the facts shown by the losing party’s evidence and reasonable inferences from that evidence. (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 856 [107 Cal.Rptr.2d 841, 24 P.3d 493]; Sada v. Robert F. Kennedy Medical Center (1997) 56 Cal.App.4th 138, 148 [65 Cal.Rptr.2d 112].)
Summary judgment is appropriate only when “all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists if the evidence and inferences therefrom would allow a reasonable juror to find the underlying fact in favor of the party opposing summary judgment. (Aguilar v. Atlantic Richfield Co., supra, 25 Cal.4th at pp. 850, 856.)
DISCUSSION
1. Associational Disability Discrimination
FEHA provides a cause of action for associational disability discrimination, although it is a seldom-litigated cause of action. (Rope v. Auto-Chlor System of Washington, Inc. (2013) 220 Cal.App.4th 635, 656-657 [163 Cal.Rptr.3d 392] (Rope), superseded by statute on another ground.) As to disability discrimination generally, FEHA makes it unlawful for an employer, “because of the . . . physical disability ... of any person, ... to discharge the person from employment ... or to discriminate against the person ... in terms, conditions, or privileges of employment.” (Gov. Code, § 12940, subd. (a).)[1] The very definition of a “physical disability” embraces association with a physically disabled person. FEHA explains that the phrase “ ‘physical disability’ . . . includes a perception . . . that the person is associated with a person who has, or is perceived to have” a physical disability. (§ 12926, subd. (o).)[2] Accordingly, when FEHA forbids discrimination based on a disability, it also forbids discrimination based on a person’s association with another who has a disability.
*1037 A prima facie case of disability discrimination under FEHA requires a showing that (1) the plaintiff suffered from a disability, (2) the plaintiff was otherwise qualified to do his or her job, with or without reasonable accommodation, and (3) the plaintiff was subjected to adverse employment action because of the disability. (Green v. State of California (2007) 42 Cal.4th 254, 262 [64 Cal.Rptr.3d 390, 165 P.3d 118] (Green); see Nealy v. City of Santa Monica (2015) 234 Cal.App.4th 359, 378-379 [184 Cal.Rptr.3d 9]; Jensen v. Wells Fargo Bank (2000) 85 Cal.App.4th 245, 255 [102 Cal.Rptr.2d 55] (Jensen).) Adapting this framework to the associational discrimination context, the “disability” from which the plaintiff suffers is his or her association with a disabled person. Respecting the third element, the disability must be a substantial factor motivating the employer’s adverse employment action. (Cal. Code Regs., tit. 2, § 11009, subd. (c); Harris v. City of Santa Monica (2013) 56 Cal.4th 203, 229, 232 [152 Cal.Rptr.3d 392, 294 P.3d 49]; Rope, supra, 220 Cal.App.4th at p. 658.)
Once the plaintiff establishes a prima facie case, “the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action.” (Deschene v. Pinole Point Steel Co. (1999) 76 Cal.App.4th 33, 44 [90 Cal.Rptr.2d 15].) The plaintiff may then show the employer’s proffered reason is pretextual (Rope, supra, 220 Cal.App.4th at p. 656) or offer any further evidence of discriminatory motive (Guz, supra, 24 Cal.4th at p. 356). “In an appropriate case, evidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias.” (Ibid.)
Here, DHE challenges plaintiff’s case on several grounds. First, it argues that plaintiff’s “entire case hinges on his fervent belief that [DHE] had an obligation to provide him with a special schedule as an accommodation for his son’s illness,” but it contends DHE had no such duty. Second, DHE argues that, as a matter of law, plaintiff cannot establish his association with his disabled son motivated his termination, and moreover he cannot show that DHE’s legitimate, nondiscriminatory reason for terminating him was pretex-tual. As we shall explain, none of these arguments entitles DHE to summary judgment.
a. Plaintiff’s Associational Disability Discrimination Cause of Action Survives His Abandonment of His Failure to Accommodate Cause of Action
DHE maintains that fundamentally this is a reasonable accommodation case, and argues that FEHA is “clear” that employers need not make *1038 accommodations for associates of the disabled—that is, only employees who are themselves disabled are entitled to reasonable accommodations. For his part, plaintiff tells us he has abandoned the reasonable accommodation cause of action and is not challenging the court’s ruling on it. We agree that the trial court’s ruling on the failure to accommodate cause of action is not at issue on appeal, and we do not decide whether FEHA establishes a separate duty to reasonably accommodate employees who associate with a disabled person.
To us, the proper inquiry is: Even if DHE had no separate duty under FEHA to provide plaintiff with reasonable accommodations for his son’s illness, was there sufficient evidence that discriminatory animus motivated Junior’s refusal to honor plaintiff’s scheduling request and his termination of plaintiff? We address that point in part l.b., post. We pause here to point out that plaintiff’s abandonment of his failure to accommodate cause of action does not in itself mean he may not pursue his claim that he suffered discrimination based on associational disability. Nor does his decision to not pursue a failure to accommodate mean that associational disability is no longer part of this case.
In its respondent’s brief, DHE implicitly acknowledges that the abandonment of the accommodation cause of action does not sound the death knell to the discrimination cause of action because DHE proceeds to argue that there is no triable issue of fact either of motive or pretext for plaintiff to establish discrimination. Even so, we find accommodation relevant as to plaintiff’s discrimination cause of action. We first observe that no published California case has determined whether employers have a duty under FEHA to provide reasonable accommodations to an applicant or employee who is associated with a disabled person. We acknowledge that the reasonable accommodation subdivision of section 12940 does not expressly refer to persons other than an applicant or employee. The pertinent language makes it an unlawful employment practice ‘“[f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee.” (§ 12940, subd. (m)(1).) But we do not read subdivision (m)(l) in isolation; instead we read parts of a statutory scheme together and construe them in a manner that gives effect to each. (City of Huntington Beach v. Board of Administration (1992) 4 Cal.4th 462, 468 [14 Cal.Rptr.2d 514, 841 P.2d 1034].) And under section 12926, subdivision (o). “ ‘physical disability . . .’ includes a perception” that a person “is associated with a person who has, or is perceived to have,” a physical disability. In other words, association with a physically disabled person appears to be itself a disability under FEHA. Like the many other definitions set forth in section 12926, this definition of a physical disability applies “in connection with unlawful practices [under FEHA], unless a different meaning clearly appears from the context.” (§ 12926.) Accordingly, when section 12940, subdivision (m) requires employers to reasonably accommodate “the known physical . . . *1039 disability of an applicant or employee,” read in conjunction with other relevant provisions, subdivision (m) may reasonably be interpreted to require accommodation based on the employee’s association with a physically disabled person. Again, given plaintiffs concession, we do not decide this point. We only observe that the accommodation issue is not settled and that it appears significantly intertwined with the statutory prohibition against disability discrimination, a subject to which we now turn.
As we explained above, FEHA creates an associational disability discrimination claim in the manner just described—by reading association with a physically disabled person (§ 12926, subd. (o)) into the Act where discrimination based on “physical disability” appears (§ 12940, subd. (a)). By express terms, the two pertinent sections of FEHA make it unlawful to “discharge [a] person from employment” (§ 12940, subd. (a)) based on physical disability and other characteristics, which include “a perception that the person has any of those characteristics or that the person is associated with a person who has, or is perceived to have, any of those characteristics.” (§ 12926, subd. (o).)
In Rope, our colleagues in Division One found sufficient allegations of both associational disability discrimination and wrongful termination in violation of public policy in a case in which the employee was fired after he announced his plan to donate a kidney to his sister. (Rope, supra, 220 Cal.App.4th at pp. 657-658.) Accordingly, Rope reversed the trial court’s sustaining of a demurrer to those causes of action. {Id. at p. 661.) In significant contrast, the Rope court rejected the plaintiff’s claim of retaliation based on a request to accommodate, impliedly acknowledging that discrimination and accommodation retaliation are separate, albeit related, concepts. (Id. at pp. 651-654.)[3]
b. The Proper Framework for Associational Disability Rests on State, Not Federal, Law
Even though DHE acknowledges that Rope sets out the current California law on associational disability, DHE points to several federal cases in support of its argument that plaintiff has not established a triable issue of fact as to discrimination. DHE relies on federal cases interpreting the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.). The ADA and the cases cited by DHE are easily distinguished. We do not discard ADA precedents blindly, and indeed we often look to federal law interpreting the ADA when construing FEHA, particularly when the question involves parallel statutory language. (Gelfo v. Lockheed Martin Corp. (2006) *1040 140 Cal.App.4th 34, 57 [43 Cal.Rptr.3d 874].) But the two statutory schemes are not coextensive. Our Legislature has expressly declared ‘“[t]he law of this state in the area of disabilities provides protections independent from those in the [ADA], Although the federal act provides a floor of protection, this state’s law has always, even prior to passage of the federal act, afforded additional protections.” (§ 12926.1, subd. (a).) One instance in which we should part ways with federal case authority is when the statutory language is not parallel. That is the case here.
The ADA creates a cause of action for associational disability discrimination using language that structurally is different than FEHA. The ‘“[gjeneral rule” is that “[n]o covered entity shall discriminate against a qualified individual on the basis of disability . . . .” (42 U.S.C. § 12112(a).) “[T]he term ‘discriminate against a qualified individual on the basis of disability’ includes,” among other things, ‘“excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.” (42 U.S.C. § 12112(b)(4).) Unlike FEHA, the ADA does not define the term “disability” itself as including association with the disabled. Instead, it defines discrimination based on association as one type of “ ‘discrimination] against a qualified individual on the basis of disability.’ ” (42 U.S.C. § 12112(a).) Elsewhere, the ADA states “ ‘discriminating] against a qualified individual on the basis of disability’ ” also includes “not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee” (42 U.S.C. § 12112(b)(5)(A), italics added.) One cannot, therefore, read “association with a disabled person” into every use of the term “disability” in the ADA.
Because of these structural differences, including differences in language for associational disability accommodation, federal precedent (e.g., Erdman v. Nationwide Ins. Co. (3d Cir. 2009) 582 F.3d 500, 510; Larimer v. International Business Machines Corp. (7th Cir. 2004) 370 F.3d 698, 700 (Larimer); Den Hartog v. Wasatch Academy (10th Cir. 1997) 129 F.3d 1076, 1084; Tyndall v. National Education Centers (4th Cir. 1994) 31 F.3d 209, 214) is less helpful than in other FEHA interpretations.
Since we are not tasked to decide whether either FEHA or the ADA creates a failure to accommodate cause of action based on associational disability, we next turn to DHE’s principal argument on appeal—that its motion for summary judgment was properly granted because there is no triable issue of fact as to either discriminatory motive or pretext.[4]
*1041 c. Triable Issues of Material Fact Exist as to Discriminatory Motive and Pretext
Moving to DHE’s challenge to the evidence of discriminatory motive and pretext, our starting point is Rope. Rope relied substantially on Larimer, which the Rope court described as “the seminal authority on disability-based associational discrimination under the ADA.” (Rope, supra, 220 Cal.App.4th at p. 656.)
In Larimer, the court opined that “[t]hree types of situation are, we believe, within the intended scope of the rarely litigated . . . association section [of the ADA], We’ll call them ‘expense,’ ‘disability by association,’ and ‘distraction.’ ” (Larimer, supra, 370 F.3d at p. 700.) The court continued: “They can be illustrated as follows: an employee is fired (or suffers some other adverse personnel action) because (1) (‘expense’) his spouse has a disability that is costly to the employer because the spouse is covered by the company’s health plan; (2a) (‘disability by association’) the employee’s homosexual companion is infected with HIV and the employer fears that the employee may also have become infected, through sexual contact with the companion; (2b) (another example of disability by association) one of the employee’s blood relatives has a disabling ailment that has a genetic component and the employee is likely to develop the disability as well (maybe the relative is an identical twin); (3) (‘distraction’) the employee is somewhat inattentive at work because his spouse or child has a disability that requires his attention, yet not so inattentive that to perform to his employer’s satisfaction he would need an accommodation, perhaps by being allowed to work shorter hours.” (Larimer, supra, 370 F.3d at p. 700.)[5]
Rope acknowledged the three categories in which Larimer found a motive for associational disability discrimination (expense, disability by association, and distraction). At the same time, Rope observed that Larimer “provided an ‘illustrative],’ rather than an exhaustive, list of the kind of circumstances which might trigger a claim of associational discrimination.” (Rope, supra, 220 Cal.App.4th at p. 657.) “[A]nd more importantly, Larimer was decided under the ADA; the provisions of FEHA are broadly construed and afford employees more protection than the ADA.” (Ibid.; see § 12926.1, subd. (a).) *1042 So while the Rope plaintiffs alleged facts did not “fit neatly within” one of Larimer’s three categories, the court concluded the plaintiff had sufficiently pleaded a prima facie “ ‘expense’ ” claim for associational disability discrimination. {Rope, supra, at p. 657.)
In Rope, the employer hired the plaintiff in late 2010. When hired, he allegedly informed the employer that he intended to take a leave of absence to donate a kidney to his sister in February 2011. He requested a paid leave of absence to do so, under a then-new statute requiring the employer to provide paid leave. Two days before the statute took effect on January 1, 2011, the employer terminated him on the allegedly pretextual basis of poor performance. (Rope, supra, 220 Cal.App.4th at pp. 642-643, 658.) The “reasonable inference” from these facts was that the employer “acted preemptively to avoid an expense stemming from [the plaintiffs] association with his physically disabled sister.” {Id. at p. 658.) The plaintiff had therefore met his burden “to show the adverse employment action occurred under circumstances raising a reasonable inference that the disability of his relative or associate was a substantial factor motivating the employer’s decision.” {Ibid.)
We agree with Rope that Larimer provides an illustrative, rather than an exhaustive, list of the kinds of circumstances in which we might find associational disability discrimination. The common thread among the Larimer categories is simply that they are instances in which the “employer has a motive to discriminate against a nondisabled employee who is merely associated with a disabled person.” (Larimer, supra, 370 F.3d at p. 702.) As we discuss above, this is an element of a plaintiff’s prima facie case—that the plaintiff’s association with a disabled person was a substantial motivating factor for the employer’s adverse employment action. Rope held the alleged facts in that case could give rise to an inference of such discriminatory motive. Our facts do not fit neatly within one of the Larimer categories either, but a jury could reasonably infer the requisite discriminatory motive.
A jury could reasonably find from the evidence that plaintiff’s association with his disabled son was a substantial motivating factor in Junior’s decision to terminate him, and, furthermore, that Junior’s stated reason for termination was a pretext. Junior knew that plaintiff needed to finish his assigned route at a time that permitted him to administer dialysis to his son. Bermudez told Junior of plaintiff’s needs in this respect and asked Junior to work with plaintiff when Junior took over as plaintiff’s supervisor. That same month, plaintiff complained to Bermudez that Junior was scheduling him later than usual, prompting Bermudez to remind Junior of plaintiff’s need to be home for his son’s dialysis. Despite knowing plaintiff’s need to be home early, the month after Junior took over, he scheduled plaintiff for a shift that started at noon, later than plaintiff had ever started before. Junior did this *1043 even though eight other shifts well before noon were available, and even though DHE’s customer had specifically requested that plaintiff—the customer’s regular driver—do its 7:00 a.m. deliveries. There was no apparent reason why Junior could not have scheduled plaintiff for one of these earlier shifts. (The explanation Junior proffered earlier for not assigning plaintiff the 7:00 a.m. shift was false. Junior told plaintiff the customer was unhappy with his work and did not want him making the customer’s deliveries; in fact, the customer’s feedback was quite the opposite, and plaintiff never had any performance issues at DHE.) Plaintiff told Junior he could not work the shift and route assigned to him because he had to be home to administer dialysis to his son, but he asked to return the next day for an assignment. It should have been apparent plaintiff was not acting in bad faith or simply being insubordinate. Yet Junior ignored plaintiff’s requests. Instead, he laughed and told plaintiff Bermudez was not in charge anymore. Even though DHE’s policies allowed for less severe disciplinary action than termination, for plaintiff’s one-time refusal to work the shift assigned to him, Junior terminated him.
One reasonable inference from these facts is that Junior, as the person responsible for scheduling the drivers, wanted to avoid the inconvenience and distraction plaintiff’s need to care for his disabled son posed to Junior. Thus, Junior engineered a situation in which plaintiff would refuse to work the shift, giving Junior reason to terminate him. In other words, plaintiff’s termination for refusal to work the shift was a pretext for Junior’s desire to be rid of someone whose disabled associate made Junior’s job harder. Just as the facts in Rope gave rise to the inference that the employer acted preemptively to avoid the expense of paid leave (Rope, supra, 220 Cal.App.4th at p. 658), these facts may give rise to the inference that Junior acted proactively to avoid the nuisance plaintiff’s association with his disabled son would cause Junior in the future.
DHE contends a fact finder could not infer discriminatory motive from Junior’s actions because it is undisputed that plaintiff had no “set” schedule, he worked a nearly identical shift the day before his termination with no problems, and the time at which he administered dialysis to his son was “fully within his discretion.” DHE suggests these facts show Junior had no reason to know plaintiff would refuse to work the shift assigned to him. But none of this evidence negated Junior’s demonstrated knowledge that plaintiff had a disabled son at home constraining his schedule. Plaintiff may not have had a set schedule in the sense that he did not start or finish his shifts at the exact same time every day, but he had a typical schedule that allowed him to start around 9:00 or 10:00 a.m. and finish by 7:00 or 8:00 p.m. Furthermore, to say plaintiff had full discretion as to what time he could administer dialysis mischaracterizes plaintiff’s responsibility. It is not as though plaintiff had the freedom to administer dialysis at a time of his choosing. The way plaintiff described it, the time varied based on his son’s condition. On some days, his *1044 son’s condition would worsen and he would need to be connected to the machine for a longer period of time. Plaintiff had learned how to check his son’s condition and, on that basis, determine when he would need dialysis. Plaintiff could work the shift starting at 11:55 a.m. one day before his termination because it did not involve a route to far-away Oxnard and permitted him to be home in time for dialysis. The facts are that Junior knew plaintiff had a special need related to his disabled son, and plaintiff told Junior that was the reason he could not work the shift on April 23, 2013. Plaintiff was able to perform satisfactorily for over three years with the schedule that previous supervisors provided until Junior took over and fired plaintiff shortly after becoming his supervisor.
Viewing the evidence in a light favorable to the nonmoving party and indulging the reasonable inferences in his favor, as we must, plaintiff has demonstrated a triable issue of material fact in response to DHE’s showing. (Miller v. Department of Corrections (2005) 36 Cal.4th 446, 470 [30 Cal.Rptr.3d 797, 115 P.3d 77] (Miller) [“We stress that, because this is an appeal from a grant of summary judgment in favor of defendants, a reviewing court must examine the evidence de novo and should draw reasonable inferences in favor of the nonmoving party. [Citation.] We believe the Court of Appeal failed to draw such inferences and took too narrow a view of the surrounding circumstances.”].)
A relatively recent district court case, Kouromihelakis v. Hartford Fire Ins. Co. (D.Conn. 2014) 48 F.Supp.3d 175, is instructive. Kouromihelakis denied an employer’s motion to dismiss the plaintiff’s claim that he was fired because of the known disability of his father. The plaintiff alleged that he had to regularly assist in the care of his disabled father, who suffered a debilitating stroke; his job performance was excellent; he periodically did not report for work by 9:00 a.m.; the employer was aware of his father’s disability and the reason for the plaintiff’s tardiness; the plaintiff asked for, but was refused, a change in hours under the employer’s “flex time” policy to accommodate his duties to his disabled father; and the employer terminated him after he arrived late one day. (Id. at pp. 178, 180-181.) The court concluded these allegations were sufficient to plead a plausible “ ‘distraction’ ” claim under Larimer, and, viewed in a light most favorable to the plaintiff, supported “a reasonable inference that the defendant terminated the plaintiff’s employment based on a belief about future absences.” (Kouromihelakis, at pp. 180-181.) Like Kouromihelakis, the evidence here gives rise to the reasonable inference that Junior terminated plaintiff based on a belief that plaintiff would want earlier shifts in the future. Neither Kouromihelakis nor this case fit neatly within the distraction paradigm set forth in Larimer, but a neat fit is not required.
*1045 The cases on which DHE principally relies do not advance its case. In Ennis v. National Assn. of Business and Education Radio, Inc. (4th Cir. 1995) 53 F.3d 55 (Ennis), the court affirmed summary judgment for the employer because the plaintiff could not establish at least two elements of her prima facie case: (1) “at the time of the discharge, she was performing her job at a level that met her employer’s legitimate expectations”; and (2) “her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.” (Id. at p. 58.) She could not show she was performing her job adequately because the employer had extensively documented numerous instances of poor job performance over the course of several years. (Id. at pp. 61-62.) Her employer terminated her for poor job performance. (Id. at p. 57.) She could not show her association with her HIV-positive minor son instead motivated her termination, especially in light of the strong evidence that she had performed poorly for years. (Id. at p. 62.) She had no facts credibly giving rise to an inference of unlawful discrimination. (Ibid.) Here, by contrast, there was no issue with plaintiff’s performance, and thus no concomitant showing that he was legitimately terminated. It was undisputed that he was performing satisfactorily during his entire time with DHE. His request for an earlier schedule only became an issue when Junior took over, and his onetime refusal to work a shift does not equate with the Ennis plaintiff’s poor performance over several years.
Magnus v. St. Mark United Methodist Church (7th Cir. 2012) 688 F.3d 331, 339, is also distinguishable. In Magnus, the plaintiff asserted her employer terminated her because of her association with her mentally disabled daughter, emphasizing that the termination came two weeks after she received a merit-based raise, and one day after she arrived at work an hour late due to a medical situation with her daughter. (Id. at p. 333.) But the undisputed evidence showed the raise was an across-the-board increase given to all full-time employees regardless of merit, and the employer had decided to terminate her the weekend before she arrived late to work. (Id. at pp. 333-334, 338-339.) The plaintiff could not rebut the employer’s legitimate, nondiscriminatory reasons for its actions. The employer based the termination on numerous documented performance deficiencies and her refusal to work weekends (because of the need to care for her daughter). (Id. at pp. 335-336, 338.) The court observed that the plaintiff’s true complaint was that the church failed to accommodate her need to care for her disabled daughter because it mandated that she work weekends—hut the ADA did not require employers to reasonably accommodate for an employee’s association with a disabled person. (Magnus, at pp. 334, 339.) FEHA, however, differs structurally from the ADA when defining associational disability causes of action. Further, like in Ennis, the many performance deficiencies in Magnus also justified the plaintiff’s termination, not just a onetime refusal to work that appears to have been engineered.
*1046 In sum, DHE failed to show it was entitled to summary adjudication of the associational disability discrimination cause of action. Plaintiffs evidence gives rise to reasonable inferences of discriminatory motive and pretext.
2. Retaliation
The retaliation provision of FEHA forbids an employer “to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under” FEHA. (§ 12940, subd. (h).) “Employees may establish a prima facie case of unlawful retaliation by showing that (1) they engaged in activities protected by the FEHA, (2) their employers subsequently took adverse employment action against them, and (3) there was a causal connection between the protected activity and the adverse employment action.” (Miller, supra, 36 Cal.4th at p. 472.)
DHE asserts plaintiff cannot establish retaliation because he lacks evidence of a protected activity, and even if he engaged in protected activity, he cannot show a causal link between that activity and the adverse employment action. We are not persuaded that DHE is entitled to summary adjudication on these grounds.
“Retaliation claims are inherently fact-specific” (Yanowitz v. L’Oreal USA, Inc. (2005) 36 Cal.4th 1028, 1052 [32 Cal.Rptr.3d 436, 116 P.3d 1123] (Yanowitz)), and “protected conduct can take many forms” (id. at p. 1042). “Standing alone, an employee’s unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct for the purposes of establishing a prima facie case of retaliation, where there is no evidence the employer knew that the employee’s opposition was based upon a reasonable belief that the employer was engaging in discrimination.” (Id. at p. 1046.) “[C]omplaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct.” (Id. at p. 1047.)
But employees need not explicitly and directly inform their employer that they believe the employer’s conduct was discriminatory or otherwise forbidden by FEHA. (Yanowitz, supra, 36 Cal.4th at p. 1046.) “ ‘[A]n employee is not required to use legal terms or buzzwords when opposing discrimination. The court will find opposing activity if the employee’s comments, when read in their totality, oppose discrimination.’ ” (Id. at p. 1047.) “We do not believe employees should be required to elaborate to their employer on the legal theory underlying the complaints they are making, in order to be protected by the FEHA.” (Miller, supra, 36 Cal.4th at p. 474.) “[C]ourts should recognize that plaintiffs have limited legal knowledge.” *1047 (Ibid., citing Moyo v. Gomez (9th Cir. 1994) 40 F.3d 982, 985.) FEHA does not protect “ ‘only the impudent or articulate. The relevant question ... is not whether a formal accusation of discrimination is made but whether the employee’s communications to the employer sufficiently convey the employee’s reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner.’ ” (Yanowitz, supra, at p. 1047.) Further, FEHA need not actually prohibit the conduct of which the employee complains. (Miller, supra, 36 Cal.4th at p. 473.) All that is required is an employee’s good faith belief that the conduct was unlawful. {Ibid.) Employees’ belief that they are complaining about prohibited conduct “may be inferred from the nature and content of their repeated complaints. The issue of a plaintiff’s subjective, good faith belief involves questions of credibility and ordinarily cannot be resolved on summary judgment.” {Id. at p. 476.)
Two California Supreme Court cases in particular illustrate the principle that employees need not complain with the clarity and precision of lawyers to engage in protected conduct: Miller and Yanowitz. In Miller, the plaintiffs asserted they complained about improper sexual relationships between a supervisor and several of his subordinates, favoritism accorded to those subordinates, and subsequent hostile or harassing treatment by those subordinates after the plaintiffs expressed their complaints. (Miller, supra, 36 Cal.4th at pp. 452, 472-473.) The Court of Appeal concluded that, although the plaintiffs opposed the supervisor’s conduct, “they had not expressed opposition to sex discrimination or sexual harassment. As the court understood the record, ‘[pjlaintiffs were not complaining about sexual harassment but unfairness. This is not protected activity under the FEHA.’ ” (Id. at p. 474.) The Court of Appeal concluded the defendants were entitled to summary judgment on the plaintiffs’ retaliation claim. (Id. at p. 460.) Our Supreme Court reversed, holding that although the plaintiffs “may not have recited the specific words ‘sexual discrimination’ or ‘sexual harassment,’ the nature of their complaint certainly fell within the general purview of FEHA, especially when we recall that this case is before us on review of a grant of summary judgment.” (Id. at p. 475.)
In Yanowitz, the plaintiff’s manager instructed her to terminate a dark-skinned female sales associate at a retail store because he did not consider the sales associate to be sufficiently physically attractive. (Yanowitz, supra, 36 Cal.4th at p. 1038.) In response, the plaintiff asked the manager for an adequate justification for terminating the sales associate. {Ibid.) On several subsequent occasions, the manager asked the plaintiff if she had fired the sales associate, and the plaintiff each time asked for adequate justification. {Ibid.) The plaintiff ultimately refused to terminate the sales associate. She never explicitly told the manager that she believed his order was discriminatory. {Ibid.) Our Supreme Court held “a trier of fact properly could find that [the manager] knew that [the plaintiff’s] refusal to comply with his order to *1048 fire the sales associate was based on [the plaintiffs] belief that [the manager’s] order constituted discrimination on the basis of sex—that is, the applicahon of a different standard to a female employee than that applied to male employees—and that her opposition to the directive thus was not merely an unexplained insubordinate act bearing no relation to suspected discrimination. [Citation.] A trier of fact properly could find that by repeatedly refusing to implement the directive unless [the manager] provided ‘adequate justification,’ [the plaintiff] sufficiently conveyed to [the manager] that she considered the order to be discriminatory and put him on notice that he should reconsider the order because of its apparent discriminatory nature.” {Id. at p. 1048.) Thus, the plaintiff’s evidence permitted a reasonable trier of fact to find that she engaged in protected activity. {Ibid.)
Likewise, here, the evidence would permit a reasonable trier of fact to find protected activity. Plaintiff complained to Bermudez in March 2013 that Junior had changed his hours so that he was having problems tending to his son. Bermudez communicated the complaint about the change in hours to Junior. Junior already knew that plaintiff sought earlier hours because of his obligation to care for his disabled son—Bermudez told Junior this when Junior took over. When Junior assigned plaintiff a later shift on April 22, 2013, the day before his termination, plaintiff worked it, but complained to Junior that he had ‘“always had help from everyone except you,” and pleaded with Junior “to have my job like always.” The following day, plaintiff expressed opposition to the shift Junior assigned him because he could not return in time to care for his son, and plaintiff refused to work it. Junior terminated him directly.
The trier of fact could reasonably find that plaintiff’s repeated complaints to Bermudez and Junior about the change in his scheduling, when both knew that he needed earlier hours to administer dialysis to his son, constituted opposition to the denial of an accommodation in his schedule. Put otherwise, plaintiff showed opposition to a practice he believed was unlawful (§ 12940, subd. (h)). Tied as the complaints were to his son’s disability, the trier of fact also could find that Junior had reason to know plaintiff’s complaints were not just an unexplained insubordinate act bearing no relation to perceived unlawful practices. Rather, one hearing plaintiff’s complaints could infer that plaintiff believed the denial of an accommodated schedule to care for his son was unlawful. He need not have used the terms “unlawful” or “reasonable accommodation” themselves. Even assuming FEHA did not actually require DHE to reasonably accommodate plaintiff based on his son’s disability, plaintiff’s good faith belief that DHE was acting unlawfully was sufficient. (Yanowitz, supra, 36 Cal.4th at p. 1043.)
The evidence would also permit a trier of fact to infer a causal link between plaintiff’s complaints and his termination. Proximity in time between *1049 the employee’s protected activity and the adverse employment action satisfies the employee’s prima facie burden. (McRae v. Department of Corrections & Rehabilitation (2006) 142 Cal.App.4th 377, 388 [48 Cal.Rptr.3d 313].) Plaintiff’s termination came the month after his first complaint and on the heels of his last two complaints. To the extent DHE argues it has offered evidence of a legitimate, nondiscriminatory reason to terminate plaintiff (his refusal to work), we have explained in Discussion, part 1. that a trier of fact could find this reason pretextual.
DHE additionally maintains that, at best, plaintiff’s remarks constituted a request for reasonable accommodation, not a complaint that Junior denied him a reasonable accommodation he previously received. DHE cites Rope for the proposition that “a mere request—or even repeated requests—for an accommodation, without more,” do not constitute protected activity. (Rope, supra, 220 Cal.App.4th at p. 652; accord, Nealy v. City of Santa Monica, supra, 234 Cal.App.4th at p. 381 [relying on Rope to hold that ‘“protected activity does not include a mere request for reasonable accommodation”].)
We note that Rope is no longer good law on that point. On July 16, 2015, the Governor approved a bill superseding Rope on this issue (Assem. Bill No. 987 (2015-2016 Reg. Sess.)). This amendment to section 12940, effective January 1, 2016, makes it unlawful for an employer to retaliate or otherwise discriminate against a person for requesting a reasonable accommodation, regardless of whether the employer granted the request. (§ 12940, subd. (m)(2).) The Legislature’s findings in enacting the amendment included this: ‘“Notwithstanding any interpretation of this issue in Rope . . . , the Legislature intends (1) to make clear that a request for reasonable accommodation on the basis of religion or disability is a protected activity, and (2) by enacting paragraph (2) of subdivision (m) . . . , to provide protection against retaliation when an individual makes a request for reasonable accommodation under these sections, regardless of whether the request was granted. With the exception of its holding on this issue, Rope . . . remains good law.” (Stats. 2015, ch. 122, § 1(d), approved by Governor, July 16, 2015.)
DHE contends Assembly Bill No. 987 (2015-2016 Reg. Sess.) does not apply retroactively to this case to make a request for accommodation protected activity.[6] ‘“A statute has retrospective effect when it substantially changes the legal consequences of past events.” (Western Security Bank v. *1050 Superior Court (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507].) To decide whether an amendment applies to actions that occurred before its enactment, the court asks as a threshold matter whether the amendment merely clarified existing law or changed existing law. (McClung v. Employment Development Dept. (2004) 34 Cal.4th 467, 471 [20 Cal.Rptr.3d 428, 99 P.3d 1015].) “[A] statute that merely clarifies, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment” ‘“because the true meaning of the statute” was always the same. (Western Security Bank v. Superior Court, supra, at p. 243.) ‘“In that event, . . . liability would have existed at the time of the actions, and the amendment would not have changed anything.” (McClung v. Employment Development Dept., supra, at p. 472.) But if the amendment changed the law and imposed liability for earlier actions, the court must decide if the change applies retroactively. (Ibid.)
DHE argues Assembly Bill No. 987 (2015-2016 Reg. Sess.) effected a change in the law, which change applies prospectively only; therefore, Rope governs and precludes plaintiffs retaliation cause of action. Plaintiff, on the other hand, argues Assembly Bill No. 987 merely clarified existing law such that Assembly Bill No. 987 applies to acts predating its enactment. We need not decide whether Assembly Bill No. 987 applies in this case.[7] Even assuming it achieved a change in the law that does not apply retroactively, and thus Rope is not superseded for our purposes, Rope does not dictate that we adjudicate the retaliation cause of action in DHE’s favor.
As we have explained, Rope held that mere requests for accommodation without anything more did not represent protected activity. (Rope, supra, 220 Cal.App.4th at p. 652.) Rope emphasized that protected activity consists of ‘“opposing] any practices forbidden” by FEHA (§ 12940, subd. (h)), while mere requests for an accommodation do not ‘“demonstrate some degree of opposition to or protest of the employer’s conduct.” (Rope, supra, at pp. 652-653; accord, Nealy v. City of Santa Monica, supra, 234 Cal.App.4th at p. 381 [request for an accommodation and engaging in the interactive process with employer did not amount to “ ‘opposing] any practices forbidden under’ FEHA”].) Plaintiff here did more than simply request an accommodation. A reasonable juror could find that his repeated complaints about the sudden changes to his schedule represented “some degree of opposition” to DHE’s failure to continue to provide that schedule. In other words, we disagree with DHE’s characterization that, at best, plaintiff’s remarks constituted a mere request for reasonable accommodation.
*1051 3. Failure to Prevent Discrimination and Wrongful Termination in Violation of Public Policy
In DHE’s moving papers, it stated one argument against the causes of action for failure to prevent discrimination and wrongful termination—that they failed as a matter of law when no discrimination or other unlawful conduct in violation of public policy occurred. On appeal, DHE argues the same. Given that DHE is not entitled to summary adjudication on the discrimination and retaliation causes of action, it has not shown it is entitled to summary adjudication on failure to prevent discrimination and wrongful termination.
4. Costs on Appeal
The court awarded DHE costs as the prevailing party in the action. Plaintiff appealed from the court’s order denying his motion to tax costs. Because we are reversing the judgment, and DHE is no longer the prevailing party, DHE is no longer entitled to costs. The order denying the motion to tax costs is also reversed.
DISPOSITION
The judgment in case No. B261165 is reversed. On appeal, plaintiff has challenged the court’s ruling on only four of his eight causes of action. The court shall enter an order granting DHE’s motion for summary adjudication on the causes of action plaintiff has abandoned: (1) failure to provide reasonable accommodation, (2) failure to engage in good faith interactive process, (3) hostile work environment, and (4) failure to prevent harassment. The court’s order shall deny summary adjudication on the remaining causes of action: (1) disability discrimination, (2) failure to prevent discrimination, (3) retaliation, and (4) wrongful termination in violation of public policy. The order denying the motion to tax costs in case No. B262524 is reversed. Plaintiff shall recover his costs on appeal.
Rubin, Acting P. J., concurred.

 Further undesignated statutory references are to the Government Code.

 The complete text states: “As used in [FEHA] in connection with unlawful practices, unless a different meaning clearly appears from the context: [¶] . . . [¶] (o) ‘Race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, age, sexual orientation, or military and veteran status’ *1037 includes a perception that the person has any of those characteristics or that the person is associated with a person who has, or is perceived to have, any of those characteristics.” (§ 12926, subd. (o).)

 That part of the Rope decision dealing with retaliation for requesting accommodation was later superseded by amendments to section 12940, subdivision (m)(2). (See pt. 2., post.)

 The dissent criticizes the limitations we established for supplemental briefing, arguing that our discussion of discriminatory motive and pretext “hinges entirely on Junior’s failure to accommodate plaintiff’s request for a different shift” (dis. opn., post, at p. 1059), and we *1041 therefore should have permitted briefing on the failure to accommodate issue. As we have stated in the text, we do not decide the accommodation issue. Instead, we conclude there is a triable issue of fact as to associational disability discrimination. That issue was fully briefed in respondent’s brief at pages 23-37.

 Larimer inserted the “qualification concerning the need for an accommodation” into category 3 “because the right to an accommodation, being limited to disabled employees, does not extend to a nondisabled associate of a disabled person” under the ADA. (Larimer, supra. 370 F.3d at p. 700.) FEHA and the ADA differ structurally in the way they create causes of action for associational disability discrimination, as we noted in paid l.b.

 Plaintiff raised Assembly Bill No. 987 (2015-2016 Reg. Sess.) in his reply brief, and the bill became effective after briefing in this matter was complete. Our original opinion in this matter discussed and relied on Assembly Bill No. 987. DHE filed a petition for rehearing arguing in part that we should permit supplemental briefing on whether Assembly Bill No. 987 operates retroactively. We granted the petition in this respect and permitted supplemental briefing, but as we discuss, we ultimately need not decide the retroactivity issue.

 Our colleagues in the Fourth District recently considered these issues in Moore v. Regents of University of California (2016) 248 Cal.App.4th 216. They held that Assembly Bill No. 987 (2015-2016 Reg. Sess.) represented a change in the law, not a clarification, and Assembly Bill No. 987 did not operate retroactively. (Moore, at pp. 246-247.)