**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PAOLA GARCIA, | Nos. 16-55881 |
| | 16-56262 |
| Plaintiff-Appellant, | |
| | D.C. No. 2:15-cv-07436-R-KS |
| v. | |
| WELLS FARGO BANK, N.A., Erroneously Sued As Wells Fargo Bank and Company; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted February 16, 2018
Pasadena, California

Before: BERZON and BYBEE, Circuit Judges, and GLEASON,** District Judge.

Paola Garcia appeals the district court's grant of summary judgment in favor

of Wells Fargo as to her discrimination, retaliation, and California Family Rights

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Sharon L. Gleason, United States District Judge for the District of Alaska, sitting by designation.

Act ("CFRA") claims and the district court's grant of costs in favor of Wells Fargo.[1]

A district court's decision to grant summary judgment is reviewed *de novo*. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011). We must "determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied substantive law." *Ballen v. City of Redmond*, 466 F.3d 736, 741 (9th Cir. 2006). "We may affirm summary judgment on any ground supported by the record." *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 956 (9th Cir. 2009) (internal quotation marks omitted).

We apply the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See also Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1113–14 (Cal. 2000).[2] After an employee establishes a prima facie case, "[t]he burden then shifts to the employer to provide a legitimate, non-discriminatory reason for the employment action." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). "Once the employer makes a sufficient

---

[1] Garcia does not appeal the district court's grant of summary judgment to Wells Fargo on her intentional infliction of emotional distress claim.

[2] Both retaliation and discrimination claims use the same *McDonnell Douglas* burden-shifting analysis. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004). Garcia's derivative claims all apply the burden-shifting analysis as well.

2

showing then the discharged employee seeking to avert summary judgment must demonstrate either that the [employer's] showing was in fact insufficient or that there was a triable issue of fact material to the [employer's] showing." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011) (alternations omitted) (quoting *Hanson v. Lucky Stores, Inc.*, 87 Cal. Rptr. 2d 487, 493 (Cal. Ct. App. 1999)). "[T]he plaintiff may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable. Such evidence of 'pretense' must be 'specific' and 'substantial' in order to create a triable issue[.]" *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998). "[A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." *Guz*, 8 P.3d at 1117 (applying *McDonnell Douglas* test).

1. Failure to Promote Claims

Wells Fargo maintains it hired a person we will identify as Melissa Doe instead of Garcia for the Loan Doc Specialist position because Doe, unlike Garcia, had previously worked as a Loan Doc Specialist 4 for Wells Fargo and was familiar with Wells Fargo's loan processing systems. Garcia acknowledged that

3

Doe was more qualified for the position. Even if Garcia and Doe had similar qualifications, an employer has the discretion to choose among equally qualified candidates. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981).

Garcia asserts that despite this nondiscriminatory reason for not promoting her, "there is direct evidence of discriminatory animus: [area manager Adele] Hassan's comment that she cannot afford to promote a pregnant woman because she would take time off work." Although Hassan supervised the two individuals who ultimately made the hiring decision, Wells Fargo provided sworn statements by both individuals; each affiant stated she "had no knowledge that Ms. Hassan had allegedly made any statement(s) relating to Plaintiff's pregnancy." Garcia does not point to any evidence to support a rational inference that the statement allegedly made by Hassan influenced Wells Fargo's hiring decision for the Loan Doc Specialist position. Therefore, the district court did not err in granting summary judgment to Wells Fargo on Garcia's failure to promote claims.[3]

---

[3] The district court appears to have found there was no possible causal link between Garcia's pregnancy and Wells Fargo's failure to promote her. But Garcia was not promoted when she was visibly pregnant, satisfying the prima facie causation requirement. *See Castro-Ramirez v. Dependable Highway Express, Inc.*, 207 Cal. Rptr. 3d 120, 137 (Cal. Ct. App. 2016) ("Proximity in time between the employee's protected activity and the adverse employment action satisfies the employee's prima facie burden."). Moreover, Wells Fargo does not dispute that Garcia established a prima facie case. Instead, Wells Fargo maintains that its proffered reasons for hiring another candidate were not pretext for discrimination.

2. Termination Claims[4]

Garcia next asserts that the district court improperly granted summary judgment to Wells Fargo on her improper termination claims.[5] Wells Fargo's proffered reason for eliminating Garcia's position was based on a "reduction in force." Wells Fargo's evidence on this point consists primarily of a "Business Case" dated October 24, 2014–three days before Garcia's termination–which states that a "slowing in the market" resulted in a "position elimination of the HMC Jr."

Garcia disputes that her termination was related to a business slowdown, and has produced evidence to support her position. First, Garcia submitted a declaration explaining that there was no overall slowdown in business, but rather an internal reassignment in loan responsibilities. Garcia also points out, accurately, that Wells Fargo's "Business Case" offers little to substantiate its bare assertion of a market slowdown. The Business Case refers to six other branches, most of which refer to difficult market conditions as the reason for eliminating the position. But at

---

[4] Garcia alleges claims for both retaliation and discrimination as to her termination as well as a CFRA claim. Garcia's CFRA claim is a retaliation claim; it is not an interference claim as she asserts. *See Richey v. AutoNation, Inc.*, 341 P.3d 438, 444 (Cal. 2015) ("'Interference' claims prevent employers from wrongly interfering with employees' approved leaves of absence, and 'retaliation' or 'discrimination' claims prevent employers from terminating or otherwise taking action against employees because they exercise those rights."). There is no indication that Wells Fargo prevented Garcia from taking the CFRA leave she had requested.

[5] The district court found there was no prima facie causation as to Garcia's termination claims. However, Garcia was terminated while on protected leave. Therefore, she satisfies the prima facie causation requirement. *See supra* note 3.

least three of those six branches are well outside the Santa Clarita area–two are in *Hawaii*. Wells Fargo does not provide any data to support that there was a change in market conditions at any of its branch locations.

Garcia also testified that she requested to take additional CFRA leave after her baby was born on August 5, 2014, which Wells Fargo granted. She maintains that approximately two weeks later, two Wells Fargo employees came to her house and took her laptop and FOB key. Shortly thereafter, one of the Wells Fargo employees took Garcia's keys because "a new HMC was going to be sitting at Garcia's desk." This evidence further supports Garcia's assertion that business was not slowing and that her termination actually came in response to her additional request for protected leave, rather than in response to the Business Case dated almost three months later.

In sum, Garcia has presented sufficient, specific evidence that demonstrates a triable issue of fact as to whether Wells Fargo's proffered explanation was not its actual motive for terminating Garcia. The evidence on both sides is limited, but which side's limited evidence is more persuasive is a question for the trier of fact. Accordingly, we reverse the district court's grant of summary judgment in favor of Wells Fargo on the wrongful termination claims and remand to the district court for further proceedings. Garcia's derivative claims and claim for punitive damages

relating to her termination are also remanded to the district court for further proceedings consistent with this memorandum.

3. Taxation of Costs

Finally, Garcia asserts that the district court committed prejudicial error in granting Wells Fargo's application to tax costs. Because we remand Garcia's wrongful termination claims, whether Wells Fargo is entitled to costs as the prevailing party is also remanded for further proceedings consistent with this memorandum.[6]

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**

---

[6] Garcia asserts that the *Christiansburg* standard should apply to Wells Fargo's application for costs. However, we have rejected *Christiansburg*'s application to cost awards in district court. *See Nat'l Org. for Women v. Bank of Cal., Nat'l Ass'n*, 680 F.2d 1291, 1294 (9th Cir. 1982) (citing *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412 (1978)). On remand, if awarding costs, the district court is to apply Federal Rule of Civil Procedure 54(d)(1).



FILED

JUN 20 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Paola Garcia v. Wells Fargo Bank, N.A.*, Nos. 16-55881, 16-56262

BYBEE, Circuit Judge, concurring in part and dissenting in part:

I agree that summary judgment properly was granted to Wells Fargo on Garcia's failure to promote claims, but I would also affirm summary judgment on Garcia's improper termination claims.

Wells Fargo's stated explanation for Garcia's termination is that her position as an HMC Jr. was eliminated by the HMC with whom she worked, Deborah Marcoux, because Marcoux's loan business slowed down and she no longer wished to share her commissions with an HMC Jr. In an internal document dated October 24, 2014, Wells Fargo explained:

> The HMC Jr relationship exists when there is an HMC willing to have an alignment with another individual allowing for a split of commissions based on the support provided and activities performed on the HMC's pipeline (or that which the HMC Jr has originated). In the Newhall/Santa Clarita branch, the HMC has elected to end the alignment as a result of a slowing in the market where reduction of 15% or greater originations is occurring. This will result in a position elimination of the HMC Jr.

Marcoux and Garcia had signed a one-year agreement establishing their HMC-HMC Jr. relationship, which ended in June 2014. Marcoux was promoted to a branch sales manager position during that time but continued to originate loans. She declares that "[a]round the middle of 2014 . . . my loan processing business began to decline as a result of the reduction in the refinancing market. My

commissions were decreasing and I was not bringing in the same income as I had been in 2013." In October 2014, she "determined that [she] no longer had enough business to support a HMC Jr." and "no longer wished to share [her] (now lower) commissions with someone else," so she elected to discontinue the HMC-HMC Jr. relationship. Because no other HMC wished to enter into an HMC-HMC Jr. relationship, Garcia's position was eliminated.

Garcia's proffered evidence that this reason for her termination is unworthy of credence is the following:

- Garcia's declaration that "[i]n or around the middle of 2014" Marcoux "gave the majority of her referrals from realtors, agents, and brokers to HMCs in her branch," so that "[o]n paper it may appear that [Marcoux's] individual loan volume decreased but in actuality she was doing the same amount of business but pushing the loans through her HMCs as it would yield her more incentive [pay]."
- Garcia's deposition testimony that two Wells Fargo employees collected her company laptop and FOB key while she was on leave in mid-August, telling her that she would be receiving new equipment.
- Garcia's deposition testimony that one day, presumably while she was on leave, she observed a new HMC sitting at her desk.[1]

In my view, this evidence is insufficient to show a genuine dispute of material fact. Garcia has no evidence or personal knowledge to contradict Marcoux's testimony as to the volume of her loan business and need for an HMC

---

[1] In her complaint, Garcia alleged that she was asked to turn in her keys in September 2014 so that a newly-hired HMC could use her desk.

Jr. in October 2014. Even taking Garcia's unsupported declaration as true, she has succeeded only in conceding that Marcoux's individual loan business was, in fact, slowing down months before the decision to eliminate her position was made. There is nothing "internally inconsistent" in Marcoux's declaration that she only "eventually" determined that she no longer wanted to work with an HMC Jr. after months of decreasing commissions.

It is not material that a new HMC may have been hired while Garcia was on leave and may have been assigned to her desk. *See* Mem. Disp. at 6. An HMC and an HMC Jr. are very different positions. An HMC, unlike an HMC Jr., originates loans, while an HMC Jr. is an assistant to a particular HMC. The HMC-HMC Jr. relationship is between individual employees and depends upon an HMC being willing to share her commissions with an HMC Jr. The hiring of a new HMC thus provides no evidence of *Marcoux's* loan business or her willingness to continue her HMC Jr. relationship with Garcia.[2]

As to the collection of Garcia's equipment, Garcia speculates that this must be evidence that the decision to terminate her employment had been made at that

---

[2] While Marcoux did not wish to continue the HMC Jr. relationship with Garcia at Wells Fargo, Marcoux voluntarily left Wells Fargo in December 2014 and actually offered Garcia a job working with her at her new place of employment around that time. Garcia accepted a job with Marcoux in May 2015.

time, deeming it an "odd coincidence" and arguing "it is obvious that her equipment was seized in order to terminate her employment."  In fact, if the decision to end Garcia's employment had been made in August in response to her request that month for additional protected leave, it is far from obvious why Wells Fargo would wait two more months—until nearly the end of her leave period—to notify Garcia of the decision.  This action does not provide any evidence undermining the proffered justification for Garcia's termination.

Nor is it likely that Garcia will be able to present any evidence substantiating her speculative arguments at trial.  She failed to take any discovery in this case.  She made no attempt to find evidence to give lie to Wells Fargo's decision timeline or reason for collecting her equipment, or to establish Marcoux's loan volume.  Garcia did not depose Marcoux, the employees who collected her equipment, or any other witnesses.  Garcia simply has no evidence that Wells Fargo's proffered explanation for her termination is pretextual.

I respectfully dissent as to this claim.

4