Filed 5/1/23  Shahin v. Kaiser Foundation Health Plan CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION FOUR

| | |
|---|---|
| SANA SHAHIN, Plaintiff and Appellant, v. KAISER FOUNDATION HEALTH PLAN, INC., et al., Defendants and Respondents. | B307750 (Los Angeles County Super. Ct. No. 19STCV08042) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge. Reversed in part and remanded with directions.

Stephan Filip, Shahane Arayi Martirosyan; Law Offices of Alex Gilanians and Alexander Gilanians for Plaintiff and Appellant.

Horvitz & Levy, Bradley S. Pauley, Scott Dixler; Cozen O'Connor, Michele Ballard Miller and Nicole Herter Perkin for Defendants and Respondents.

# INTRODUCTION

Sana Shahin appeals from the trial court's summary judgment in favor of Southern California Permanente Medical Group (SCPMG), Kaiser Foundation Hospitals (KFH), Kaiser Foundation Health Plan, Inc. (KFHP), and The Permanente Federation LLC (TPF) (collectively, Kaiser) on her action for various employment disability, discrimination, and retaliation related causes of action, including several claims under the Fair Employment and Housing Act (FEHA) (Government Code § 12900 et seq.).

The crux of Shahin's claims is that for over a decade, Kaiser permitted her to work from home three days a week, which allowed her to care for her son, who has a disability. During that time, as evidenced by her performance reviews, Shahin's managers felt she was perfectly capable of doing her job from home, and that she did it well. In 2017, however, Shahin's new supervisor decided all managers must be present in the office five days a week. Shahin pleaded with Kaiser to keep her telecommuting schedule because she could not work without it. But Kaiser refused to acquiesce.

Although Shahin may be right that her new manager's edict is unfair or unwise, the Legislature has not required an employer to accommodate an employee who has a desire to work from home to assist with care for a child with a disability. Thus, Shahin does not have a viable claim under FEHA, or any other statute she invokes, for Kaiser's refusal to permit her to continue her telecommuting arrangement, and thus to care for her son.

Shahin also alleges Kaiser violated FEHA by failing to accommodate her own disability and failing to engage in the interactive process regarding her disability. For the reasons

2

discussed below, we conclude the trial court erred by granting summary adjudication of those claims. Therefore, summary adjudication of those claims and entry of summary judgment is reversed. We affirm summary adjudication in favor of Kaiser on the balance of Shahin's claims.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2000, Shahin began working for KFHP in Pasadena as a contract benefits specialist. In 2005, Norair Jemjemian, the Chief Financial Officer of KFHP, offered Shahin a supervisor role in the Outside Referrals Department (ORD) of SCPMG in Los Angeles. Shahin explained she could not commute five days a week to Los Angeles from her home in San Dimas because she had a nine-year old son with autism who required regular care. Jemjemian responded she could telecommute three days a week to reduce her commuting time and increase the time she could spend with her son. The Area Medical Director at Los Angeles Medical Center approved the telecommuting arrangement. Based on this arrangement, Shahin accepted the new position.

Shahin continued to telecommute for several years, and Kaiser eventually promoted her to senior manager in 2014.

In 2016, Shahin took a medical leave of absence. When she returned to work in January 2017, Shahin began reporting directly to Milena Garabedian. Garabedian, in turn, reported to SCPMG's Chief Administrative Officer, Sharon Peters. In or around April 2017, Garabedian informed Peters that Shahin telecommuted three days a week so she could care for her son. Peters explained to Garabedian she did not believe managers should telecommute because they should be visible in the workplace each day to respond to staff needs and ensure the fulfillment of productivity expectations. Based on this belief,

3

Peters instructed Garabedian to tell Shahin she could no longer telecommute. According to Garabedian, she did not inform Shahin right away, however, because she sought to determine whether there was a formal agreement in writing regarding Shahin's telecommuting arrangement. By the end of 2017, Garabedian determined there was no written telecommuting agreement in Shahin's file.

Shahin had issues with Garabedian's "management style and treatment of [her]" from the day she began reporting to Garabedian. Shahin felt Garabedian "nitpick[ed]" her, failed to support her, assigned her "worthless" tasks, criticized her emails, and used "intimidation tactics" by telling her that Peters was "pissed" and that Shahin was being investigated for an unspecified reason. Shahin also thought Garabedian rolled her eyes, giggled at her, and whispered about her in meetings.

In May 2017, Garabedian gave Shahin her performance review for 2016. The review ranked Shahin "excellent" in multiple leadership skills and noted that she "is very eloquent and provides great customer service to our physicians and leaders." Shahin was "okay with" the review, but she disagreed with some of the ratings marked "successful" rather than "excellent" because she thought 2016 was her "highest performing year in [her] entire career at [Kaiser]." She considered the review "untruthful," in part because she did not report to Garabedian in 2016.

Shahin experienced stress and anxiety from her interactions with Garabedian. In July 2017, Shahin fainted. She attributed the incident to work-related stress. Shahin informed Garabedian that she was experiencing stress and seeking treatment from a cardiologist that required her to wear a heart

4

monitor, but Garabedian did not "respond to [Shahin's] request to stop putting [her] through that level of pressure." After the fainting incident, Kaiser granted Shahin's requests for days off of work for medical appointments, and permitted Shahin to work from home for approximately two-and-a-half weeks while she wore a heart monitor.

Between August 2017 and May 2018, Shahin continued having issues with Garabedian based on, among other things, Garabedian questioning emails Shahin wrote, demanding Shahin hold her staff accountable for issues unrelated to her staff, talking down to Shahin through condescending emails and in person in front of others, not greeting Shahin during work meetings, assigning rudimentary "busy-work" to Shahin, and making budget cuts in Shahin's department but not others.

On May 10, 2018, Garabedian met with Shahin to discuss Shahin's performance review for 2017. Garabedian lowered certain ratings in the performance evaluation and noted she wanted Shahin to be more strategic and innovative. Shahin felt "traumatized" because she thought the "whole evaluation [was] untruthful." She became upset, told Garabedian she felt tightness in her chest, and walked out of the meeting. Garabedian had planned to finally inform Shahin during the May 10, 2018 meeting that she was required to work on-site and could no longer telecommute three days a week, but she was unable to do so before Shahin left the meeting.

After she left the performance evaluation meeting, Shahin sent an email to Human Resources Director, Paul Martin. She stated she had a "very unpleasant meeting with [Garabedian] today" and she had "been very reluctant to come forward hoping that things will get better, but they are only getting worse." She

further stated "[t]he stress [Garabedian] is causing [her] is impacting [her] mental and emotional wellbeing . . . . Last year [she] passed out and went [through] extensive treatment with cardiology for stress . . . due to [Garabedian's] passive aggressive, unprofessional, and harassment style . . . ." Shahin's reasons for believing Garabedian targeted her are somewhat unclear, but according to her email: "[Garabedian] has a dual and unprofessional relationship with one of [Shahin's] disgruntled employees and her family, Gabriel Khouri, the step nephew, which impacted her managerial judgment and caused her to target [Shahin] from day one, when she stepped into LA. [Garabedian] came to [Los Angeles Medical Center] with preconceived and negative perceptions of [Shahin] as a person with the intent to harass [her] out of her loyalty to Gabriel Khouri and his family." In response to the email, Martin replied: "After reading this complaint I've forwarded it onto a member of our investigative team who will follow up with you on these concerns. As you know [Kaiser] has several resources to assist in these matters and you'll find them equally helpful in reviewing your issues."

On May 17, 2018, Garabedian sent Peters and Martin a draft memorandum informing Shahin that her telecommuting agreement "will no longer be supported[,]" and effective June 4, 2018, Shahin would be required to work on-site. Garabedian told Peters and Martin she planned to give the memorandum to Shahin the following day.

On May 18, 2018, Shahin emailed Martin, Peters, William Grice (a Senior Vice President), and Dr. Michael Tome (the Area Medical Director for Los Angeles Medical Center) requesting that they "step in and not subject [her] to further harassment and

distress from [Garabedian]." She stated "[o]ne of the primary causes of my distress is the fact that [Garabedian] from day [one] has orchestrated a campaign to tarnish my name . . . ." She further relayed: "I very much value my job and my career of 18 years with exemplary performance. I have not filed legal action yet, and frankly do not wish to file legal action hoping for this to be resolved internally by moving me to a different manager and hoping that [ ] a member of the executive team will hear my side of the story and see my documented facts proving that [Garabedian] has malicious intent for personal and unrelated matters and resolve this dispute in a fair and honorable manner without resorting to litigation."

On May 21, 2018, Shahin met with Garabedian and Martin. Garabedian gave Shahin the memorandum she had shown Peters the week before, which explained that Shahin needed to be "accessible and engaged with [her] team, [her] colleagues, as well as [her] client groups" and that, to accomplish this, she must be physically present and have visibility in operations during business hours. A few days later, Shahin emailed Garabedian asking her to reconsider, describing telecommuting as an "accommodation due to [her] disabled son's special needs." Garabedian responded that she lacked "documentation of any qualifying need to accommodate [Shahin's] work schedule." Thus, Garabedian asked Shahin to provide her with documentation supporting her request so that she could speak with Human Resources and "get guidance on next steps." Garabedian then forwarded Shahin's email to Martin. Martin conducted a review of Shahin's file and found no documents indicating Shahin had been allowed to telecommute as an accommodation for her son's disability.

On May 25, 2018, Shahin took a paid medical leave of absence. Shahin's doctor diagnosed her with anxiety and depression, and placed her off work through October 8, 2018.

On August 7, 2018, while still on leave, Shahin emailed Martin, Peters, Grice, and Dr. Tome, again explaining that she has "enough evidence to provide that will demonstrate a 'conflict of interest' with [Garabedian] which impacted her managerial judgment and caused her to target [Shahin] from day one[.]" She further reiterated: "[Garabedian] came to [Los Angeles Medical Center] with preconceived and negative perceptions of me as a person with the intent to harass me out of her loyalty to her friend and his family." She asked for the situation to be resolved by: (1) reporting to a manager who is not associated with Garabedian; (2) continuing her telecommuting arrangement; (3) having a different manager redo her 2016 and 2017 performance review; and (4) having her good name cleared with Martin, Peters, Grice, and Dr. Tome.

Martin responded that her complaints have been assigned to an investigator, but when Shahin went on a medical leave of absence, she was "informed that this and other matters would all be held in abeyance until [she was] cleared to return to work." Martin further stated: "You also have been requested to provide documentation related to your work schedule and your inability to work the hours outlined by the organization. To date, this requirement has not been met."

On October 5, 2018, Shahin then sent two documents to Martin: (1) a letter from Kaiser's former area medical director Dr. Donald Marcus dated May 2018, in which Dr. Marcus explained that in 2005 he had authorized Shahin to telecommute three days a week; and (2) a 2017 certification form for government-provided

8

in-home supportive services indicating Shahin's son had "autism spectrum disorder," and the physician who completed it answered "yes" to the question "Is this individual unable to independently perform one or more activities of daily living (e.g., eating, bathing, dressing, using the toilet, walking, etc.) or instrumental activities of daily living (e.g., housekeeping, preparing meals, shopping for food, etc.)?"

Three days later, Shahin met with Martin to discuss returning to work. She gave him a note from her doctor releasing her to return to work, but stating "she will need accommodation" in the form of "reporting to a neutral party" as opposed to "her current manager." Based on the doctor's note, Martin told Shahin she could not then return to work but would be placed on a further medical leave of absence while Kaiser reviewed her request.

Martin turned over management of Shahin's medical leave and accommodation requests to Human Resources manager Steven Estrada. Estrada concluded the documents Shahin provided were insufficient to support her accommodation requests, noting the certification form did not state Shahin needed to telecommute three days a week, and Shahin's doctor failed to describe any specific work restrictions or limitations that would prevent Shahin from reporting to Garabedian. Estrada told Shahin that Kaiser needed additional information to support her accommodation requests. Human Resources case manager Dee Dee Ruiz requested this additional documentation from Shahin and advised her that, pending receipt of such information, Shahin would remain on a medical leave of absence as a form of reasonable accommodation.

Shahin replied to Ruiz that her letter was "very inappropriate and mean spirited[,]" and asserted that no additional information should be necessary to support her requests. She further explained: "My doctor feels that it would be unhealthy for me to report to [Garabedian]. [¶] . . . [¶] I think we can discuss options of me reporting to someone else, I keep bringing this up to no response. Based on what your letter states, I don't even know what to ask my doctor to write on the note other than what he has already written." Estrada responded a few days later and repeated that the "information [Kaiser has] received from [her] thus far does not clarify the limitations of [her] condition as it relates to [her] ability to perform major life activities, particularly [her] essential functions of [her] position."

On December 10, 2018, Shahin provided Estrada with an additional note from her doctor dated December 7, 2018. The doctor wrote that he had treated Shahin "for anxiety and depression secondary to work related stress" since June 2018. The doctor noted that Shahin's "psychiatric disturbances arose first during episodes of supervisory sessions with her supervisor/manager," and he repeated his recommendation that she "resume[ ] her responsibilities at work with the accommodation of a change of supervisor/manager."

Estrada emailed Shahin, again telling her more information was necessary, and that she could return to work immediately if she agreed to work on-site and report to Garabedian. Estrada proposed meeting in person. Shahin did not respond, so Estrada followed up in late January 2019, proposing possible dates for a meeting. Shahin responded by repeating that she had provided all necessary paperwork and expressing frustration with the process.

On March 8, 2019, Estrada sent a letter to Shahin again explaining that Kaiser had not received sufficient information to support her accommodation requests and stating Kaiser needed "clarification . . . regarding what limitations are affecting [Shahin's] ability to perform the essential functions of [Shahin's] position, which would include reporting to [her] current manager." Without any explanation, other than the statement that "there are not multiple managers overseeing [Shahin's] work," Estrada again stated "reporting to the manager in charge of this area is an essential function of [her] job." Estrada advised Shahin that her employment may be subject to termination (but eligible for rehire) if she failed to provide the requested information or return to work and perform all essential functions of her position.

In March 2019, while still on leave, Shahin filed this lawsuit against Kaiser. The complaint asserts six causes of action: (1) violation of FEHA; (2) intentional infliction of emotional distress; (3) retaliation in violation of the California Family Rights Act (CFRA); (4) violation of Labor Code section 1102.5; (5) violation of Labor Code sections 226, 432, and 1198.5; and (6) wrongful termination in violation of public policy.

Kaiser moved for summary judgment or, alternatively, summary adjudication. The trial court granted Kaiser's motion for summary judgment, and entered judgment in its favor.[1]

---

1       In its summary judgment ruling, the trial court noted Shahin abandoned her claim for intentional infliction of emotional distress and wrongful termination in violation of public policy by failing to defend them in opposition to Kaiser's motion. The court also concluded Shahin's claim based on Kaiser's alleged

Shahin timely appealed from the judgment.

**DISCUSSION**

## I. Standard of Review and Legal Standards

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (§ 437c, subd. (p)(2).) "[W]e must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his or] her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) We accept as true both the facts shown by the losing party's evidence and reasonable inferences from that evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856.) "We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court,

---

failure to provide her personnel and payroll records (fifth cause of action) was untimely. Shahin does not address these rulings in her opening brief and therefore, forfeits these issues on appeal. (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1345-1346, fn. 6 ["[A]n appellant's failure to raise an issue in its opening brief [forfeits] it on appeal"].)

regardless of the trial court's stated reasons." (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 637.)

Summary judgment is appropriate only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) A triable issue of material fact exists if the evidence and inferences therefrom would allow a reasonable juror to find the underlying fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at pp. 850, 856.)

An employer may meet its initial burden in moving for summary judgment or adjudication of an employment discrimination claim by presenting evidence that one or more elements of the plaintiff's prima facie case is lacking, or the employer acted for a legitimate, nondiscriminatory reason. (*Zamora v. Security Industrial Specialists, Inc.* (2021) 71 Cal.App.5th 1, 31; *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1181; *Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1158 (*Featherstone*).) The elements of a prima facie case generally include "evidence that (1) [plaintiff] was a member of a protected class, (2) he or she was qualified for the position he [or she] sought or was performing competently in the position he [or she] held, (3) he [or she] suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." (*Guz, supra*, 24 Cal.4th at p. 355.) A legitimate, nondiscriminatory reason is one that is unrelated to the prohibited bias and, if true, would preclude a finding of discrimination or retaliation. (*Id.* at p. 358.) "[I]f nondiscriminatory, [the employer's] true reasons

13

need not necessarily have been wise or correct. [Citations.] While the objective soundness of an employer's proffered reasons supports their credibility . . ., the ultimate issue is simply whether the employer acted with a motive to discriminate illegally." (*Ibid*., italics omitted.)

If the employer satisfies its initial burden, the burden shifts to the plaintiff to present evidence creating a triable issue of fact showing the employer's stated reason was a pretext for unlawful animus. (*Husman v. Toyota Motor Credit Corp., supra*, 12 Cal.App.5th at p. 1182; *Featherstone, supra*, 10 Cal.App.5th at pp. 1158-1159.) The plaintiff's evidence must be sufficient to support a reasonable inference that discrimination was a substantial motivating factor in the decision. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232; *Guz, supra*, 24 Cal.4th at pp. 353, 357.) Whether judgment as a matter of law is appropriate will depend on a number of factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case. (*Guz, supra*, 24 Cal.4th at p. 362.)

## II.     First Cause of Action for Violation of FEHA

In a single cause of action for violation of FEHA, the complaint alleges: discrimination, based on Shahin's own disability; associational disability discrimination, based on her son's disability; retaliation; and a failure to take appropriate corrective actions to stop future discrimination and retaliation and instead, condoning the conduct. The complaint further references, under the heading "FACTS APPLICABLE TO ALL CAUSES OF ACTION," alleged failures to accommodate Shahin and a failure to "engage[ ] in any form of interactive process

14

with Shahin." We therefore construe Shahin's cause of action for violation of FEHA to encompass claims for: (1) disability discrimination and associational disability discrimination; (2) retaliation; (3) failure to prevent discrimination and retaliation; (4) failure to reasonably accommodate; and (5) failure to engage in the interactive process. We address each claim in turn.

### A. Shahin Failed to Establish a Prima Facie Case of Associational Disability Discrimination Based on Her Son's Disability or Disability Discrimination Based on Her Own Disability

"A prima facie case of disability discrimination under FEHA requires a showing that (1) the plaintiff suffered from a disability, (2) the plaintiff was otherwise qualified to do his or her job, with or without reasonable accommodation, and (3) the plaintiff was subjected to adverse employment action because of the disability. [Citations.] Adapting this framework to the associational discrimination context, the "disability" from which the plaintiff suffers is his or her association with a disabled person. Respecting the third element, the disability must be a substantial factor motivating the employer's adverse employment action." (*Castro-Ramirez v. Dependable Highway Express, Inc.* (2016) 2 Cal.App.5th 1028, 1037 (*Castro-Ramirez*).)

The trial court found Kaiser met its initial burden to show Shahin could not establish a prima facie case of disability discrimination or associational discrimination because: (1) Shahin could not show she suffered any adverse action due to either a disability she suffered or from the disability of her son; and (2) Shahin "failed to come forth with sufficient evidence that discrimination was a substantial motivating factor" in revoking Shahin's telecommuting arrangement or

15

being placed on medical leave. Even if Shahin could establish a prima facie case, the trial court concluded Kaiser presented evidence of a legitimate, nondiscriminatory reason for revoking the telecommuting arrangement, and Shahin's evidence "does not rise to the level of pretext needed to find a triable issue of fact . . . ." For the reasons discussed below, we conclude (contrary to the trial court) that, based on the facts of this case, revocation of Shahin's telecommuting arrangement constituted an adverse action. We agree with the trial court, however, that Kaiser met its burden of showing Shahin could not establish the disability (either Shahin's own disability or her association with her disabled son) was a substantial factor motivating Kaiser's decision to revoke the telecommuting arrangement. Shahin, therefore, cannot establish a prima face case of discrimination.

"[A]lthough an adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable, the determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1052, fn. omitted (*Yanowitz*).) As discussed above, Shahin originally declined the offer for a new role at the company which would increase her commute time significantly because she needed to care for her then nine-year-old son with autism. The medical director at Los Angeles Medical Center, however, approved a telecommuting arrangement in which she would work from home three days a week. Based on this arrangement, Shahin accepted the new position. Thus, based on the "unique circumstances" of this case demonstrating Shahin accepted the position on the

16

premise that she would work from home three days a week to care for her son, we conclude revocation of such an arrangement constitutes an adverse employment action.

We now turn to whether Shahin can establish the third element of a prima facie case of discrimination, i.e., that either her association with her disabled son, or her own disability (stress and anxiety allegedly caused by her supervisor's behavior), motivated Kaiser's revocation of her telecommuting arrangement. We conclude, as a matter of law, she cannot.

Although not an exhaustive list, there are three types of situations that generally evidence a motive for associational disability discrimination: (1) where the associate's disability may cost the employer money (expense); (2) where the employer may fear the employee will become ill from associating with a disabled person (disability by association); or (3) where the employer perceives the employee is somewhat inattentive at work due to the distraction of caring for a disabled associate, though not to the point of needing a schedule accommodation (distraction). (See *Castro-Ramirez, supra*, 2 Cal.App.5th at pp. 1041-1042.) Shahin presents no evidence of any of these circumstances, or any other circumstances suggesting a motive to revoke her telecommuting arrangement because of her son's disability.

Shahin relies on the following evidence in support of her associational discrimination claim: (1) Shahin was permitted to telecommute for 14 years, but this changed when Garabedian became her supervisor; (2) unlike all of Shahin's other supervisors, past and concurrent, Garabedian had an issue with Shahin from the moment she met her and learned that she telecommuted three days of the week to take care of her autistic child; and (3) on April 9, 2018, Shahin told Garabedian that she

17

was at the hospital for her son and was going to miss a meeting with Garabedian. She contends a reasonable inference from these facts is that Garabedian wanted to avoid the inconvenience and distraction Shahin's need to care for her disabled son posed to Garabedian and by revoking her telecommuting arrangement, Garabedian knew Shahin would no longer be able to work for Kaiser. We are unpersuaded.

First, Kaiser submitted evidence demonstrating it was Peters's decision—not Garabedian's—to revoke the telecommuting arrangement. Second, even assuming it was Garabedian's decision, in Shahin's own words from her emails in 2018 to Kaiser management, Garabedian targeted and harassed her from "day [one]" and had a malicious intent because of "personal and unrelated matters" involving a disgruntled employee. According to Shahin, Garabedian "out of her loyalty to [the disgruntled employee], did not support [Shahin] as [Shahin's] manager . . . ." Shahin also testified at her deposition that she does not know why the decision was made to revoke her telecommuting arrangement and, in her view, Garabedian no longer permitted Shahin to telecommute because "[Garabedian] herself could not work from home."[2] On this record, even viewing the evidence in light favorable to Shahin and indulging the reasonable inferences in her favor, as we must, Garabedian "targeted" Shahin and revoked her telecommuting arrangement based on reasons wholly unrelated to Shahin's association with her disabled son.

---

2      Peters, Garabedian's supervisor, did not permit Garabedian to telecommute.

Shahin's reliance on *Castro-Ramirez, supra,* 2 Cal.App.5th 1028 is misplaced. There, an employee needed to administer daily dialysis to his son, and for years the employee's supervisors scheduled his shifts to begin in the morning to enable him to do so. (*Id*. at p. 1031.) The employee sued his employer after a new supervisor changed the employee's schedule and ultimately fired him for refusing to work a shift that did not allow him to be home in time. (Id. at pp. 1032.) The evidence demonstrated the supervisor changed the employee's shift even though eight other shifts well before noon were available, and even though the employer's customer had specifically requested that the employee—the customer's regular driver—do its morning deliveries. (*Id*. at p. 1042-1043.) There was no apparent reason why the supervisor could not have scheduled the employee for one of these earlier shifts. (*Id*. at p. 1043) And, the explanation the supervisor proffered for not assigning the employee the 7:00 a.m. shift was false. (*Ibid*.) The supervisor told the employee the customer was unhappy with his work and did not want him making the customer's deliveries; in fact, the customer's feedback was quite the opposite, and the employee never had any performance issues. (*Ibid*.) The Court of Appeal held there were triable issues of fact regarding discriminatory motive under those circumstances, reasoning that a rational jury could conclude the supervisor engineered a situation that would give him a reason to terminate the employee to avoid the inconvenience of accommodating the employee's needs.[3] (*Id*. at pp. 1043-1044.)

---

3     We note the dissent in *Castro-Ramirez* criticized the majority's conclusion that these facts sufficed to show a discriminatory motive. In the dissent's view, FEHA does not

The facts here are different. Unlike in *Castro-Ramirez*, here, as discussed further below, Kaiser had a valid business reason for changing Shahin's telecommuting arrangement— Peters, in her business judgment, believed telecommuting was incompatible with Shahin's managerial responsibilities. The

---

impose a requirement that an employer reasonably accommodate the scheduling needs of a nondisabled employee caring for a family member with a disability. Thus, according to the dissent, a failure to make such an accommodation – which, in essence, was what the dissent found the evidence that the employer's changes to the employee's schedule to be – could not, by itself, suffice as evidence of discriminatory motive. (*Castro-Ramirez*, *supra*, 2 Cal.App.5th at 1059-1060 (dis. opn. of Grimes, J.) [noting that the majority opinion "necessarily assumes that the employer had an obligation to accommodate plaintiff's desired schedule" and that "[t]here is no such obligation under . . . FEHA"].)

For the reasons we explain below in our discussion of reasonable accommodation in section II.D.i, we agree with the *Castro-Ramirez* dissent that FEHA does not require an employer to reasonably accommodate a nondisabled employee solely because the nondisabled employee is charged with caring for a disabled family member. We need not, however, and do not address the impact of that conclusion for a finding of discriminatory motive. We do not take sides on that point as between the *Castro-Ramirez* majority and dissent. Here, even assuming *arguendo* the *Castro-Ramirez* majority was correct that discriminatory motive can sometimes be shown by an employer's failure to reschedule the work of a non-disabled employee who must care for a disabled family member, Shahin failed to raise a triable issue regarding whether Kaiser changed her telecommuting arrangement because of the inconvenience of scheduling around her son's disability. Thus, from any angle, Shahin could not show discriminatory motive.

record contains no evidence this proffered business reason was fabricated (although it is inconsistent with Shahin's satisfactory performance evaluations over the preceding decade). Moreover, Shahin's own complaint and deposition testimony indicate her belief that Garabedian revoked her telecommuting arrangement based on a personal reason outside of work and because Garabedian, herself, was not permitted to telecommute. No similar facts were present in *Castro-Ramirez*. We therefore decline to find discriminatory motive based on *Castro-Ramirez*.

We likewise conclude Shahin cannot demonstrate she was subjected to an adverse employment action because of her own disability. Shahin makes two points: (1) in July 2017, Shahin told Garabedian that she had a syncopal episode from work stress and was wearing a heart monitor and in response, "Garabedian did nothing but continue to scrutinize Shahin's work"; and (2) once Shahin escalated her complaints in May 2018, the leadership placed her on an unpaid medical leave. Neither point demonstrates Shahin's disability (stress and anxiety) was a factor motivating an adverse employment action, let alone a substantial factor.

First, that Garabedian "continued to scrutinize [Shahin's] work" does not demonstrate discriminatory motive; in fact, it shows Garabedian treated Shahin the same even *before* Shahin claims she suffered from a disability. Second, contrary to Shahin's contention, her leave was not involuntary. Shahin initiated the medical leave in May 2018. Because Shahin's doctor said she could not return to work under Garabedian's supervision, however, Kaiser kept her on leave while it sought more information about the nature of her purported disability. And, Kaiser submitted evidence that the medical leave was paid

for over a year: Martin declared that based on his review of Shahin's employment records, Kaiser continued paying Shahin for over a year while she was on leave (until November 25, 2019). Shahin provided no evidence to the contrary.

Moreover, even assuming Shahin established a prima facie case of disability discrimination, Kaiser had legitimate business reasons for its actions. Legitimate business reasons "in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding *of discrimination*." (*Guz, supra*, 24 Cal.4th at p. 358, original italics.) Under Kaiser's telecommuting policy, managers had discretion to "terminate a telecommuting arrangement at any time, with or without cause." Peters declared: "In discussions I had with Garabedian, I learned that Shahin had a practice of regularly telecommuting from home three days per week. I informed Garabedian that in my role as [Chief Administrative Officer], I did not support telecommuting for my managers, as I did not consider it to be effective, and that this extended not only to my direct reports, such as Garabedian, but to other managers reporting up to me, such as Shahin. As [Chief Administrative Officer], I did not support telecommuting for managers because I believe that managers who oversee a team of employees must be visible and in their department each day to respond to staff's needs and ensure productivity expectations are met. Based on these beliefs, I instructed Garabedian that she would need to instruct Shahin that she could no longer telecommute."

Because Peters's reason for not permitting Shahin to telecommute is unrelated to discriminatory bias, the burden shifts to Shahin to demonstrate a triable issue of fact with ""substantial evidence that the employer's stated reasons were

22

untrue or pretextual, or that the employer acted with discriminatory animus, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.""" (*Ortiz v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 568, 578, italics omitted.)

Shahin argues pretext can be demonstrated from the following evidence: (1) Peters assumed her role in January 2015, but did not revoke Shahin's telecommuting arrangement until 2018; (2) purported inconsistencies in Peters's deposition testimony regarding when she learned Shahin had a disabled son; (3) Ronald Eleccion, another Kaiser employee, was permitted to telecommute; (4) Dan McReynolds (to whom Shahin had reported indirectly) allows his reports to telecommute; and (5) Garabedian's deposition testimony purportedly shows it was her decision to revoke the telecommuting arrangement, not Peters's. We are not persuaded Shahin has met her burden to produce substantial evidence of pretext to defeat summary judgment.

First, as soon as Peters learned from Garabedian in April 2017 that Shahin telecommuted three days a week, Peters instructed Garabedian to tell Shahin she could no longer telecommute. The delay between when Peters first instructed Garabedian to require Shahin to work on-site and when Garabedian implemented that decision does not constitute substantial evidence that Peters's reason for revoking the telecommuting arrangement was pretextual. (See *Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1735 ["[T]o avert summary judgment, [the employee] must produce 'substantial responsive evidence' that the employer's showing was untrue or pretextual. [Citation.] For this purpose, speculation cannot be regarded as substantial responsive evidence"].)

23

Second, even assuming Peters knew at all relevant times that Shahin had a disabled son, there is no evidence Peters denied the telecommuting request due to bias against Shahin or her son.

Third, it is irrelevant whether another Kaiser employee was permitted to telecommute, and whether Peters knew that the employee's telecommuting was authorized. Peters did not supervise Eleccion, and Kaiser's telecommuting policy gave each supervisor discretion whether to allow telecommuting by subordinates.

Fourth, whether McReynolds permits his other reports to telecommute is irrelevant to whether Peters's proffered reason for not permitting Shahin to telecommute was untrue or pretextual.

Fifth, contrary to Shahin's contention, Garabedian's deposition testimony does not demonstrate it was her decision to require Shahin to work on-site. When Garabedian testified that she looked at the decision to require Shahin to work on-site from a "business perspective," she did not state it was *her* decision to make. In any event, as discussed above, even if it was Garabedian's decision, there is insufficient evidence from which a trier of fact can infer that Garabedian revoked the telecommuting arrangement because of Shahin's disability or her son's disability.

Finally, Shahin argues that her request in 2018 to report to another manager could have been granted, and she provided sufficient documentation in support of her accommodation requests to report to another manager and telecommute three days a week. These arguments focus on whether Kaiser failed to provide a reasonable accommodation, which we will address below. They do not, however, demonstrate discriminatory motive or pretext.

Accordingly, we conclude Shahin failed to produce evidence from which a reasonable trier of fact could infer Kaiser discriminated against her based on her son's disability, or her own disability, when it revoked her telecommuting arrangement and extended her medical leave of absence.

**B.    Shahin Cannot Establish a Prima Facie Case of Retaliation and There is No Evidence Kaiser's Actions Were a Pretext for Retaliation**

FEHA retaliation claims are governed by the *McDonnell Douglas* burden-shifting analysis. (*Yanowitz, supra*, 36 Cal.4th at p. 1042.) "[I]n order to establish a prima facie case of retaliation under [ ] FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Ibid*.)

Shahin first argues the "proximity in time between when Shahin requested to take a day off instead of meeting with Garabedian for her [one-on-one] and when Garabedian decided to revoke Shahin's telecommuting accommodation satisfies this burden for causal connection." But Kaiser submitted evidence that the decision to require Shahin to work on-site was made *before* Shahin missed the meeting. Shahin, therefore, cannot satisfy the causal link element of a prima facie case of retaliation.

Next, Shahin argues it can be inferred Kaiser's actions were retaliatory because she submitted multiple written and verbal requests between May and December 2018 to Garabedian, Human Resources, and Kaiser management, "pleading to continue her 14-year-old accommodation to telecommute" and "[i]n response, Kaiser rejected her request and placed Shahin on

25

an indefinite, unpaid 'medical leave.'" But even assuming an involuntary unpaid medical leave constitutes an adverse action, the record reflects that is not what happened here. As discussed above, Shahin initially requested leave in May 2018, and submitted a doctor's note stating she could return in October if Kaiser reassigned her to a new manager and reinstated her telecommuting arrangement. In response to the accommodation request, Kaiser kept her on *paid* medical leave as an accommodation to her while it sought more information about the nature of her purported disability.

In any event, even assuming Shahin had made out a prima facie case of retaliation, if the employer offers a legitimate, nonretaliatory reason for the adverse employment action, the presumption of retaliation vanishes and the burden shifts back to the employee to prove intentional retaliation. (*Yanowitz, supra*, 36 Cal.4th at p. 1042.) For the reasons discussed above in section II.A, Kaiser had legitimate reasons for its actions, and there is no evidence these reasons were a pretext for discrimination or retaliation.[4]

---

4      Shahin also argues that after she complained to HR about Garabedian's treatment of her, Peters, Garabedian, and Martin began referring to Shahin as "Project X." She offers no evidence, however, that this term was used in a derogatory manner. Nor does she argue how the use of the term demonstrates an intent to retaliate against Shahin because of her complaints. (See *King v. United Parcel Service, Inc*. (2007) 152 Cal.App.4th 426, 433-434 [speculation and subjective beliefs are insufficient to create a triable issue of fact on the issue of pretext].)

**C.** **Shahin's Claim for Failure to Prevent Discrimination and Retaliation Fails for the Same Reasons as Her Claims for Discrimination and Retaliation**

To prevail on a claim for failure to prevent discrimination or retaliation under FEHA, a plaintiff must show she was subject to discrimination or retaliation. (*Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1314-1315.) Because Shahin's claims for discrimination and retaliation fail as a matter of law (for the reasons discussed above), her claim for failure to prevent discrimination and retaliation cannot survive summary judgment.

**D.** **The Trial Court Correctly Held Employers Have No Duty to Accommodate Employees Who Associate with Disabled Persons, But Erred by Granting Summary Adjudication of Shahin's Claim for Failure to Accommodate Her Own Disability**

**i.** **Employers have no duty to accommodate the schedule of an employee with a disabled relative.**

Relying on *Castro-Ramirez, supra*, 2 Cal.App.5th 1028, Shahin contends Kaiser had a duty under FEHA to accommodate her request to telecommute three days a week to care for her disabled son. The *Castro-Ramirez* court, however, expressly declined to decide whether an employer has a duty to reasonably accommodate employees who associate with disabled persons. Acknowledging the plaintiff in *Castro-Ramirez* abandoned his reasonable accommodation claim, the court stated: "[W]e do not decide whether FEHA establishes a separate duty to reasonably accommodate employees who

27

associate with disabled persons." (*Castro-Ramirez, supra*, 2 Cal.App.5th at p. 1038.) To the extent the *Castro-Ramirez* court nevertheless opined in dicta that FEHA may "reasonably be interpreted to require accommodation based on the employee's association with a physically disabled person" (*ibid*), we disagree. As discussed below, unlike the list of protected characteristics used in some sections of FEHA—a list FEHA expressly defines as including associational disability—FEHA does not include associational disability in the definition of any of the language used in the reasonable accommodation and interactive process sections.

Under Government Code section 12926, subdivision (o), association with a disabled person is a protected characteristic. (Gov. Code, § 12926, subd. (o) [defining protected characteristics including "'physical disability, mental disability, [and] medical condition" to include "a perception that . . . the person is associated with a person who has, or is perceived to have, any of those characteristics"].) Thus, section 12926, subdivision (o) incorporates associational disability into instances where FEHA includes the list of protected characteristics; for example, it is incorporated into the code sections governing disability discrimination. (See Gov. Code, § 12940, subds. (a)-(d) & (j)(1).)

In contrast to FEHA's provisions regarding discrimination, the provisions regarding an employer's duty to accommodate a disabled employee neither mention association with a disabled person nor incorporate the list of protected characteristics that includes association with a disabled person. Government Code section 12940, subdivision (m)(1), requires employers "to make reasonable accommodation for the known physical or mental disability of an applicant or employee." Government Code section

12940, subdivision (n) further requires an employer "to engage in a timely, good faith, interactive process with [an] employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." FEHA's definitions of "[p]hysical disability," "[m]edical condition," and "[m]ental disability" do not include association with another who has a disability. (Gov. Code, § 12940, subds. (j) & (m).) Thus, based on the plain language of these sections, FEHA does not require an employer to accommodate an employee's association with a person who has a disability. (See *Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 662 [courts follow the plain meaning of clear statutory language unless absurd consequences would result].)

Our interpretation of the FEHA provisions governing reasonable accommodation claims is consistent with the legislative history of Government Code section 12926, subdivision (o). The Legislature expanded the list of protected characteristics to include associational disability in a bill seeking to expand the scope of FEHA's protections against discrimination specifically. An analysis by the Assembly Judiciary Committee staff describes the bill as "clarif[ying] that FEHA's protections against housing and employment discrimination cover associational rights as well, i.e., discrimination based upon perceptions about who one may be associating with will now be protected under the Act." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1670 (1999-2000 Reg. Sess.) May 11, 1999, p. 15.) The key issue raised by the bill was whether "civil rights statutes [should] be amended to strengthen discrimination protections or clarify

ambiguities in the law[.]" (*Id*. at p. 1., original formatting omitted.) This analysis demonstrates the Legislature added section 12926, subdivision (o) to FEHA to strengthen discrimination protections, not to expand the scope of interactive process or reasonable accommodation claims.

Accordingly, consistent with the plain language of FEHA and the legislative history, we conclude FEHA does not impose reasonable accommodation or interactive process obligations on an employer based on an employee's association with a family member or other person who has a disability.

We are sympathetic to Shahin's point that her previous supervisors permitted her to telecommute three days a week for over a decade, and to her desire to care for her son. But we agree with the dissent in *Castro-Ramirez* that "[h]owever desirable it might seem for the law to require an employer to accommodate the needs of the disabled associate of a nondisabled employee, the courts are not free to expand the law in this way without any basis in the statutory language or other precedent." (*Castro-Ramirez, supra*, 2 Cal.App.5th at 1063 (dis. opn. of Grimes, J.).)

### ii. Shahin's requested accommodation for her disability (stress and anxiety) is not per se unreasonable.

Next, Shahin contends the trial court erred by finding her requested accommodation (reassignment to a new supervisor) for her own disability is per se unreasonable. We agree.

"'Reasonable accommodation' is defined in . . . FEHA and its implementing regulations only by way of example." (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 972, fn. omitted.) Reasonable accommodation may include

30

"reassignment to a vacant position." (Gov. Code, § 12926, subd. (p)(2); Cal. Code Regs., tit. 2, § 11065, subd. (p)(2)(N); see also *id.*, § 11068, subd. (d)(1)(A) ["As a reasonable accommodation, an employer or other covered entity shall ascertain through the interactive process suitable alternate, vacant positions and offer an employee such positions, for which the employee is qualified, under the following circumstances: [¶] (A) if the employee can no longer perform the essential functions of his or her own position even with accommodation . . . ."].)

The trial court relied on an unpublished federal district court opinion (*Alsup v. U.S. Bancorp* (E.D. Cal., Jan. 15, 2015, No. 2:14-CV-01515-KJM-DAD) 2015 U.S. Dist. LEXIS 5100 (*Alsup*)) to conclude Shahin's request to be reassigned to a new supervisor was unreasonable as a matter of law. While unpublished federal district court opinions are citable, they do not constitute binding authority. (*City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1678, fn. 5.) We decline to follow *Alsup*.

There, plaintiff alleged she requested a transfer to a new department because she suffered from severe depression and acute anxiety stemming from her supervisor treating her "'in a negative and devaluing manner'" and making comments "'of an unwelcome sexual nature . . . .'" (*Alsup, supra*, 2015 U.S. Dist. LEXIS at p. 2.) The court held plaintiff failed to state a claim for failure to accommodate because "the plaintiff's requested accommodation, transfer to a new position under a new supervisor, is unreasonable as a matter of law." (*Id.* at p. 19.) We find the court's reasoning in *Alsup* unpersuasive. After citing to out-of-state cases, the *Alsup* court stated that even

31

without the benefit of those cases, plaintiff has not stated a claim because "[p]laintiff's work environment could not have been modified or adjusted in a manner that would have enabled the plaintiff to perform the functions of her job." (*Ibid.*)

Here, Shahin did not request reassignment to a new position, but merely reassignment to a new supervisor (e.g., one of the other supervisors she reported to indirectly—McReynolds or Peters). If Garabedian indeed harassed Shahin (causing her to suffer from stress, anxiety, and depression), placing Shahin under a different supervisor would have been warranted and would be an obvious, reasonable accommodation that would permit Shahin to return to work. Thus, Shahin's work environment could have been adjusted (e.g., by transferring Shahin to another supervisor or permitting Shahin to report directly to Peters) so that Shahin could perform the essential functions of her job. We therefore decline to follow *Alsup* and conclude its purported per se rule—that reassigning an employee to a new supervisor can never be a reasonable accommodation—is inconsistent with FEHA. The trial court, therefore, erred by granting summary adjudication of Shahin's reasonable accommodation claim based on her own disability.[5]

---

5      We reject Kaiser's argument, made for the first time on appeal, that Shahin's stress is not a disability under FEHA. Kaiser relies on *Higgins-Williams v. Sutter Medical Foundation* (2015) 237 Cal.App.4th 78, 84 for the proposition that "[a]n employee's inability to work under a particular supervisor because of anxiety and stress related to the supervisor's standard oversight of the employee's job performance does not constitute a disability." But a jury could reasonably infer that Garabedian's purported harassment of Shahin was not "standard oversight."

### E. Kaiser is Not Entitled to Summary Adjudication of Shahin's Interactive Process Claim

Shahin contends Kaiser did not engage in a good faith interactive process with Shahin when she requested an accommodation for her own disability (reassignment to a new supervisor) and an accommodation for her son's disability (work from home three days a week).

With respect to the telecommuting accommodation, FEHA does not recognize an interactive process claim based on associational disability for the same reasons it does not recognize a reasonable accommodation claim based on associational disability. (See Discussion, section II.D., *ante*.) We therefore turn to Shahin's claim based on her own disability.

Government Code section 12940, subdivision (n) imposes a duty on employers to engage in an "interactive process" regarding reasonable accommodations. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1003.) That provision establishes that it is an unlawful practice for an employer "to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." (Gov. Code, § 12940, subd. (n).) "[I]f the process fails, responsibility for the failure rests with the party who failed to participate in good faith." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54.) "While a claim of failure to accommodate is independent of a cause of action for failure to

33

engage in an interactive dialogue, each necessarily implicates the other." (*Ibid.*)

As discussed above, Shahin's requested accommodation—reassignment to a new supervisor—is *not* unreasonable as a matter of law. Kaiser, therefore, had a duty to engage in the interactive process. A reasonable factfinder could conclude it failed to do so.

In response to Kaiser's request for additional documents substantiating her disability, Shahin provided a letter from her psychologist dated December 7, 2018, stating in relevant part: "Shahin has been under my care since June 18, 2018 for anxiety and depression secondary to work related stress. . . . [¶] . . . Per [ ] Shahin'[s] self-report and my clinical impression, it appears that her psychiatric disturbances arose first during episodes of supervisory sessions with her supervisor/manager, and subsequently during reminiscences of those events. She characterized those episodes of meeting with her supervisor/manager as traumatic, adversarial, and emotionally distressing. [¶] As her treating psychologist, my main and only concern is [ ] Shahin's mental health and recovery. With that goal in mind, it is my recommendation that she resumes her responsibilities at work with the accommodation of a change of supervisor/manager." According to Kaiser, this was insufficient. Estrada emailed Shahin explaining Kaiser needed additional documentation regarding her request to work from home three days a week. The email does not specifically address, however, Shahin's request to be assigned a new supervisor. Rather, it vaguely states that essential functions of Shahin's job include physically reporting

34

to the worksite and "report[ing] to the individuals who manage your role and department."

On this record, we conclude a reasonable factfinder could find Kaiser failed to engage in the interactive process in good faith by simply claiming that reporting to Garabedian was an "essential function" of Shahin's job, without any evidence or explanation supporting this conclusion.[6] Thus, the trial court erred by granting summary adjudication of Shahin's interactive process claim based on her own disability.

## III.  Third Cause of Action for Retaliation in Violation of CFRA

CFRA makes it unlawful for an employer "to refuse to grant a request by an employee" for family care and medical leave and "to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right" provided by CFRA. (Gov. Code, § 12945.2, subds. (a) & (q).) "A plaintiff can establish a prima facie case of retaliation in violation of [ ] CFRA by showing the following: (1) the defendant was a covered employer; (2) the plaintiff was eligible for CFRA leave; (3) the plaintiff exercised his or her right to take a qualifying leave; and (4) the plaintiff suffered an adverse employment action *because he or she exercised the right to take CFRA leave*." (*Rogers v. County of Los Angeles* (2011) 198 Cal.App.4th 480, 491, original italics; *Avila v.*

---

6      We acknowledge Estrada's email suggests setting up "a formal meeting . . . to outline where we are in the interactive process[.]" But a meeting would be futile based on Kaiser's position that reporting to Garabedian was an essential function of Shahin's job.

*Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1254, 1260; § 12945.2.)

Preliminary, we reject Shahin's argument that Kaiser waived its challenge to her CFRA retaliation claim by, in its summary judgment moving papers, focusing on Shahin's failure to prove retaliation arising from her leave in 2016, as opposed to her leave in 2018. Although Kaiser addressed the 2016 leave based on the complaint's discussion of the 2016 medical leave, and the allegation that Shahin experienced retaliation "for taking the medical leave", Kaiser also argued more generally that Shahin's CFRA claim failed because she "was never terminated, and [Kaiser] had legitimate, non-retaliatory reasons for its actions." Then, in response to Shahin's opposition memorandum, which focused on alleged retaliation for her 2018 leave, Kaiser addressed the 2018 leave specifically in its reply brief. Kaiser, therefore, preserved its argument on appeal that Shahin failed to establish a prima face case of retaliation in violation of CFRA based on any of Shahin's medical leaves.

Turning to the merits, Shahin contends a reasonable factfinder can find Kaiser retaliated against her in violation of CFRA. We disagree. In support of her argument, Shahin relies on Peters's testimony that she understood Shahin's telecommuting request to be covered by Kaiser's Family Medical Leave Act (FMLA) policy, and that Estrada thought Shahin might be "a candidate for FMLA" if she had not already exhausted her authorized leave. But there is no dispute Kaiser allowed Shahin to take leave (in fact, Kaiser extended her leave), and whether Shahin was eligible to take leave is irrelevant to whether she suffered an adverse employment action in retaliation for doing so.

We similarly reject Shahin's argument that a jury can infer retaliation in violation of CFRA based on Dr. Tome's testimony that he viewed Shahin less favorably around the time she went on leave in 2018. Dr. Tome clarified his opinion about Shahin changed because she walked out of her evaluation meeting with Garabedian, not because she went on leave. In any event, Shahin cites no evidence that Dr. Tome had any role in the alleged adverse employment actions she asserts (i.e., revocation of her telecommuting arrangement, keeping her on leave rather than assigning her to a different supervisor, and Garabedian's alleged harassing conduct). Indeed, Dr. Tome changed his opinion about Shahin *after* her alleged mistreatment by Garabedian and the decision to revoke her telecommuting arrangement. Thus, Dr. Tome's opinion could not have motivated those actions.

Accordingly, we conclude Shahin cannot demonstrate an essential element of a prima face case of retaliation in violation of CFRA, i.e., that she suffered an adverse employment action because she exercised the right to take CFRA leave.

## IV.    Fourth Cause of Action for Retaliation in Violation of Labor Code section 1102.5

Labor Code section 1102.5, subdivision (b), forbids retaliation against an employee for disclosing information "if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."

In support of this claim, Shahin generally alleges Kaiser retaliated against Shahin "as a result of her complaints and/or protests of FEHA and CFRA violations, Health and Safety Code violations, the whistleblower laws . . . , among other laws and regulations, including . . . , removing job responsibilities

37

and authority, denying promotion, denying salary increase and termination." More specifically, the complaint alleges: Kaiser . . . retaliated against Shahin because in January 2015 she refused to put profits over the health of Kaiser patients. Specifically, in January 2015, Shahin processed a referral for a patient to go to a specific convalescent hospital. Jerry Yu proceeded to call Shahin and berate her for doing her job of processing the transfer. . . . Further, on another occasion, Shahin informed Yu that there was a referral compliance violation that had legal ramifications. In response, Yu removed Shahin from having responsibilities at KFH at West Los Angeles."

In opposition to Kaiser's motion for summary judgment, Shahin abandoned her retaliation theory based on Yu's conduct, and instead focused on retaliation for her complaints in 2018 about Garabedian. We agree with the trial court that Shahin cannot defeat summary judgment based on an unpled theory of whistleblower retaliation. (See *Jacbos v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444 [a party may not oppose a summary judgment motion based on a theory that is not alleged in the pleadings].)

## V.     Shahin's Request for Punitive Damages

Shahin contends she is entitled to punitive damages because she was intentionally discriminated against. Because we held above that the trial court correctly granted summary adjudication of Shahin's claims for discrimination and retaliation in violation of FEHA, we also hold it correctly granted summary adjudication on the issue of punitive damages. (See *Fullington v. Equilon Enterprises, LLC* (2012) 210 Cal.App.4th 667, 689-690; *Brewer v. Second Baptist Church* (1948) 32 Cal.2d 791, 801-802 [a

defendant must have committed a tortious act before punitive damages can be assessed].)

## VI.    Evidentiary Rulings

Finally, Shahin contends the trial court abused its discretion by sustaining all but nine of Kaiser's objections to the four declarations Shahin submitted in support of her opposition. Specifically, Shahin argues Kaiser objected to certain exhibits attached to declarations submitted in support of Shahin's opposition, and those objections were sustained, even though Kaiser submitted the same documents in support of its motion. Shahin further describes the trial court's order as "quizzical," providing the following examples: the court sustained Kaiser's objection on relevancy grounds to Shahin's description of her job responsibilities, but overruled the objection to the evidence summarizing her job responsibilities; the court overruled one objection but sustained the other even though both of the sentences objected to were explaining Shahin's reporting structure; the court sustained Kaiser's objection on relevancy grounds to Shahin's declaration that she had never seen the job description Kaiser submitted in support of its motion as Shahin's job description; the court sustained Kaiser's objection on relevancy grounds to a statement in a Kaiser employee's declaration, which purportedly impeached Garabedian; and the court sustained Kaiser's objections on the grounds of the best evidence rule, relevance, improper opinion testimony, and lack of foundation where Shahin declares that she complained to top personnel in writing about Garabedian's treatment and requested accommodation even though Shahin attached the email she described in her declaration.

Even if the trial court erred by sustaining some or all of the objections identified in Shahin's opening brief, we conclude Shahin's argument fails because she neither argued nor demonstrated prejudice from any error. (See, e.g., *Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1449 [reversal for an erroneous blanket evidentiary ruling is required only on a showing of prejudice]; *Truong v. Glasser* (2009) 181 Cal.App.4th 102, 119 [a party challenging a trial court's evidentiary rulings on summary judgment has two burdens on appeal—to show affirmatively the rulings were error and to establish prejudice].)

## DISPOSITION

The judgment is reversed. Summary adjudication of claims for failure to accommodate and failure to engage in the interactive process based on Shahin's own disability is reversed (Issue Nos. 10 and 12, respectively). Summary adjudication of all other claims and issues is affirmed. The matter is remanded for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, Acting P. J.

We concur:

COLLINS, J.

DAUM, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.

41